STATE OF NORTH CAROLINA v. PHILLIP EUGENE ANDERSON, DEFENDANT

No. COA04-1537

(Filed 17 January 2006)

## 1. Evidence— expert ballistics testimony—North Carolina not a *Daubert* state—reliability

The trial court did not abuse its discretion in a first-degree murder case by admitting expert ballistics testimony under N.C.G.S. § 8C-1, Rule 702, because: (1) defendant's arguments are based on *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and our Supreme Court has held the principles of that case do not apply in North Carolina; (2) under the three-part test applicable in North Carolina, defendant failed to demonstrate at trial that the expert testimony at issue was unreliable; (3) defendant cannot, as he attempted to do on appeal, challenge the witness's reliability by attempting to introduce on appeal scientific literature that was not first presented to the trial court; (4) once the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable and relevant, any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility; and (5) defendant's arguments regarding the discoloration of the bullets resulting from the bodily fluids of the victim, the corrosion of the gun, and the subjective nature of an agent's examination go to the weight of the agent's testimony and not its admissibility.

## 2. Evidence— photographs—victim's body—different illustrative purposes

The trial court did not abuse its discretion in a first-degree murder case by admitting fifteen photographs of the victim's body taken at the crime scene and during the autopsy, because: (1) the photographs were illustrative of and relevant to testimony of the crime scene investigator and the medical examiner; (2) even though some of the pictures looked similar, the individual photographs each show a different view of the body, a different injury inflicted, and different pieces of evidence found around the body; and (3) defendant cannot on appeal contend that a witness should have walked through and explained each photograph when he failed to make this argument at trial, and further this argument cannot be reconciled with defendant's contention that

these photographs were so prejudicial that they should have been excluded under N.C.G.S. § 8C-1, Rule 403.

**3. Criminal Law— prosecutor's argument—reasonable inferences drawn from evidence—harmless error to assert personal belief**

The trial court did not abuse its discretion in a first-degree murder case by overruling defendant's objection to two of the prosecutor's remarks during closing arguments that defendant contends went beyond the evidence offered at trial and by failing to intervene ex mero motu when the prosecutor expressed a personal opinion regarding defendant's defense, because: (1) the State's suggestion that the victim met defendant to settle matters with him and that defendant shot the victim on the side of the road before dragging her into the woods were inferences reasonably drawn from the evidence presented; and (2) although the prosecutor's comment that the defense was "just crazy" was an improper remark under N.C.G.S. § 15A-1230 since it expressed a personal belief as to the truth or falsity of defendant's arguments, the comment did not rise to the level of fundamental unfairness given the evidence presented at trial.

**4. Homicide— voluntary manslaughter—failure to give instruction—harmless error**

Although defendant contends the trial court erred in a first-degree murder case by denying defendant's request for a jury instruction on voluntary manslaughter, any possible error was harmless because when a jury is properly instructed on both first-degree murder and second-degree murder and returns a verdict of guilty of first-degree murder, the failure to instruct on voluntary manslaughter is harmless error.

Appeal by defendant from judgment entered 29 April 2004 by Judge Donald W. Stephens in Durham County Superior Court. Heard in the Court of Appeals 8 June 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Stephen F. Bryant, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer, for defendant-appellant.*

GEER, Judge.

Defendant Phillip Eugene Anderson appeals from his conviction for first degree murder. Defendant argues primarily that the trial court erred in admitting expert ballistics testimony. Defendant's arguments are, however, based upon *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), even though our Supreme Court has held that the principles of *Daubert* do not apply in this State. *See Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 597 S.E.2d 674 (2004). Under the test applicable in North Carolina, as set forth in *State v. Morgan*, 359 N.C. 131, 159, 604 S.E.2d 886, 903 (2004), *cert. denied*, —— U.S. ——, 163 L. Ed. 2d 79, 126 S. Ct. 47 (2005), defendant failed to demonstrate at trial that the expert testimony at issue was unreliable. Defendant cannot, as he attempts in this appeal, challenge the witness' reliability by attempting to introduce on appeal scientific literature that was not first presented to the trial court. Since we find defendant's other arguments also to be unpersuasive, we conclude that defendant received a trial free of error.

## Facts

The State's evidence tended to show the following. Prior to the fall of 2001, defendant and Teresa Adams had been dating in an on-again, off-again relationship. In the fall of 2001, both defendant and Adams were living in Durham, but Adams had started dating Matthew Jacobie, defendant's next door neighbor.

On a Sunday afternoon that fall, defendant came to Jacobie's house looking for Adams. Jacobie's roommate, Stacy Wong, told Adams that defendant was outside, and Adams went with defendant into his house. Subsequently, Adams told Wong and Jacobie that defendant had said that somebody was going to get hurt if she kept visiting Jacobie's house and that defendant had tried to choke her.

The following Tuesday, 2 October 2001, Adams told her roommate, Patricia Andrus, that she was going out for a few hours and if she was not back by midnight, to go ahead and put the alarm on. Andrus stayed awake until about 1:00 a.m., but Adams had not yet returned home. By lunchtime the next day, Andrus still had not seen Adams, and there was no indication that Adams had slept in her room. Three days later, on 5 October 2001, Andrus filed a missing persons report with the Durham Police.

Ramal Lowery, a friend of defendant's, testified that defendant called him several times on the night of 2 October and in the early

morning hours of 3 October. During the last call, defendant asked Lowery to come to his house so that they could talk about something important. When Lowery arrived, defendant told him that he had killed Adams. Because Lowery did not believe him, defendant had Lowery drive the two of them to an area off Hillandale Road in Durham. Defendant told Lowery to park in a wooded area beyond a parking lot, and Lowery could see a body laying on the ground when he got out of his car. As Lowery drove back to defendant's home, defendant kept saying, "I'm a piece of shit, I shouldn't have done it."

Defendant also told Lowery that he needed to get rid of the gun used to kill Adams. Once they reached defendant's house, defendant went inside and came out with a duffle bag. They drove down Highway 751 to a bridge. Defendant took a brown paper bag out of the duffle bag and threw it over the bridge. Defendant told Lowery that a gun was inside the bag.

On 5 October 2001, the police received a call that there was a body on the side of the road near the intersection of Hillandale Road and Horton Road. Officers found Adams' body, which was already decomposing, in a ditch about five to 10 feet off the road. Adams had suffered two gunshot wounds, one to the right side of the back of the head and the other to her neck. The medical examiner estimated that the time of death was approximately two to three days before the body was discovered.

The Durham police subsequently found a gun near a creek that ran underneath Highway 751 in Chatham County. Teresa Powell, an agent with the State Bureau of Investigation, conducted tests on the gun found near the creek and the bullets removed from Adams' body. In Powell's opinion, the bullets were fired from the gun recovered near the creek.

Defendant was indicted for the first degree murder of Teresa Adams. At trial, defendant did not present any evidence. The jury found defendant guilty of first degree murder, and defendant was sentenced to life imprisonment without parole.

I

[1] Defendant contends that the trial court erred under Rule 702 of the Rules of Evidence by admitting Powell's ballistics testimony.[1]

---

1. Defendant also argues on appeal that the expert testimony violated his constitutional rights. Defendant did not, however, make this constitutional argument below, and "[i]t is well settled that this Court will not review constitutional questions that

Defendant argues that Agent Powell did not comply with "normally accepted scientific methodology" and that "Ms. Powell's results should not have been accepted under *Daubert*." Defendant further objects that "[f]or scientific evidence to be admissible, the expert must point to external sources that validate the methodology," citing *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311 (9th Cir.), *cert. denied*, 516 U.S. 869, 133 L. Ed. 2d 126, 116 S. Ct. 189 (1995), the Ninth Circuit's decision on remand from *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). Defendant has, however, argued the wrong standard. As our Supreme Court confirmed in *State v. Morgan*, 359 N.C. 131, 159, 604 S.E.2d 886, 903 (2004) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 469, 597 S.E.2d 674, 693 (2004)), "North Carolina is not a *Daubert* state."

Instead of evaluating expert witnesses under the standard set out in *Daubert*, courts in this State must conduct a three-step inquiry when considering whether to admit expert testimony pursuant to Rule 702 of the Rules of Evidence: "(1) whether the expert's proffered method of proof is reliable, (2) whether the witness presenting the evidence qualifies as an expert in that area, and (3) whether the evidence is relevant." *Morgan*, 359 N.C. at 160, 604 S.E.2d at 903-04. When making determinations about the admissibility of expert testimony, the trial court is given wide latitude and "rulings under Rule 702 will not be reversed on appeal absent an abuse of discretion." *Id.*, 604 S.E.2d at 904.

Defendant does not argue that Agent Powell was not qualified as an expert or that the evidence was not relevant. Defendant challenges only the reliability of Agent Powell's testimony. Reliability in this State is "a preliminary, foundational inquiry into the basic methodological adequacy of an area of expert testimony. This assessment does not, however, go so far as to require the expert's testimony to be proven conclusively reliable or indisputably valid before it can be admitted into evidence." *Howerton*, 358 N.C. at 460, 597 S.E.2d at 687.

In order to assess reliability, a trial court may look to expert testimony regarding reliability, may take judicial notice, or may use a combination of the two approaches. *Id.* at 459, 597 S.E.2d at 687. The Supreme Court has indicated that the trial court should first review precedent "for guidance in determining whether the theoretical or technical methodology underlying an expert's opinion is reliable." *Id.*

were not raised or passed upon in the trial court." *State v. Carpenter*, 155 N.C. App. 35, 41, 573 S.E.2d 668, 673 (2002) (internal quotation marks omitted), *disc. review denied*, 356 N.C. 681, 577 S.E.2d 896 (2003).

STATE v. ANDERSON

[175 N.C. App. 444 (2006)]

"[W]hen specific precedent justifies recognition of an established scientific theory or technique advanced by an expert, the trial court should favor its admissibility, provided the other requirements of admissibility are likewise satisfied." *Id.*

If no precedent exists, such as when an expert is proposing "novel scientific theories, unestablished techniques, or compelling new perspectives on otherwise settled theories or techniques," the trial court is required to focus on "indices of reliability" to determine reliability, including the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury, and independent research conducted by the expert. *Id.* at 460, 597 S.E.2d at 687. These indices are not, however, exclusive. *Id.*

Our Supreme Court has previously upheld the admission of similar firearms or ballistics testimony. *See State v. Gainey*, 355 N.C. 73, 88-89, 558 S.E.2d 463, 473-74 (holding that the trial court did not err in admitting testimony of SBI agent regarding rifling characteristics of particular bullets based on his experience and the fact that he had tested the bullets upon which he based his opinion), *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165, 123 S. Ct. 182 (2002); *State v. Felton*, 330 N.C. 619, 638, 412 S.E.2d 344, 356 (1992) (upholding admissibility of SBI agent's testimony regarding rifling characteristics of particular bullets). Defendant does not address this precedent, but rather argues that the State did not meet its burden because "[t]he State presented no evidence substantiating the scientific validity" of Agent Powell's comparisons of the bullets and the gun.[2] As *Howerton* and *Morgan* establish, however, the State was not necessarily required to do so.

In challenging Agent Powell's methodology at trial, defendant did not offer any expert testimony or scientific literature. On appeal, however, defendant relies upon a series of journal articles that he contends establish that Agent Powell improperly failed to use photographs to document her work and that her methodology failed to comply with accepted scientific methods. Those articles were not, however, presented to the trial judge. A defendant cannot establish an abuse of discretion by the trial judge based on scientific literature never provided to that judge. Defendant's literature review thus does not demonstrate that the trial judge abused his discretion in making his preliminary determination that Agent Powell's testimony was suf-

2. The case cited by defendant, *Sexton v. State*, 93 S.W.3d 96 (Tex. Crim. App. 2002), employs a *Daubert* approach not applicable in North Carolina.

ficiently reliable to meet the requirements of Rule 702 of the Rules of Evidence.

According to our Supreme Court, "once the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable (and, of course, relevant), any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility." *Howerton*, 358 N.C. at 461, 597 S.E.2d at 688. Questions of weight are for a jury to determine, *id.* at 460, 597 S.E.2d at 687, and " '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence,' " *id.* at 461, 597 S.E.2d at 688 (quoting *Daubert*, 509 U.S. at 596, 125 L. Ed. 2d at 484, 113 S. Ct. at 2798).

Defendant's arguments regarding the discoloration of the bullets resulting from the bodily fluids of the victim, the corrosion of the gun, and the subjective nature of Agent Powell's examination go to the weight of Agent Powell's testimony and not its admissibility. *See Felton*, 330 N.C. at 638, 412 S.E.2d at 356 (holding that uncertain length of time the bullets had been in an abandoned water heater and the fact that several types of guns could have produced the rifling characteristics at issue "impact the weight of the evidence, not its admissibility"). Defendant cross-examined Agent Powell about the accuracy of her methods and also questioned the witness about whether ballistic evidence was a scientific certainty. It was for the jury to decide how to weigh Agent Powell's testimony. *See Howerton*, 358 N.C. at 468, 597 S.E.2d at 692 ("[W]e are concerned that trial courts asserting sweeping pre-trial 'gatekeeping' authority under *Daubert* may unnecessarily encroach upon the constitutionally-mandated function of the jury to decide issues of fact and to assess the weight of the evidence."). We, therefore, hold that the trial court did not abuse its discretion in admitting the expert testimony.

II

[2] Defendant next argues that the trial court erred in admitting 15 photographs taken of the victim's body at the crime scene and taken during the autopsy because the photographs were minimally probative, highly prejudicial, and meant to inflame the passions of the jury to the detriment of defendant. Defendant objected at trial, but the trial court found that "all of the photographs that are before the Court show separate and distinct views of the body, or of items of evidence close to the body, or in proximity to the body, or on

the body. They're all different. They are not unduly duplicative. They are not unfairly prejudicial, and their probative value outweigh any prejudice in this case."

Pictures of a victim's body may be introduced "even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). While noting that there is no bright line test to determine what is an excessive amount of photographs, *Hennis* instructs that courts should examine the "content and the manner" in which the evidence is used and the "totality of circumstances" comprising the presentation. *Id.* at 285, 372 S.E.2d at 527. The decision as to whether evidence, including photographic evidence, is more probative than prejudicial under Rule 403 of the Rules of Evidence and what constitutes an excessive number of photographs lies within the sound discretion of the trial court. *State v. Sledge*, 297 N.C. 227, 232, 254 S.E.2d 579, 583 (1979).

After reviewing the photographs at issue and the other evidence in the record, we conclude that the trial court did not abuse its discretion in allowing the jury to view the 15 photos. The photographs were illustrative of and relevant to testimony of the crime scene investigator and the medical examiner. Additionally, even though some of the pictures looked similar, the individual photographs each show a different view of the body, a different injury inflicted, and different pieces of evidence found around the body. We cannot say that the trial judge abused his discretion in determining that the pictures were not unduly duplicative, unfairly prejudicial, or of limited probative value. *See State v. Trull*, 349 N.C. 428, 509 S.E.2d 178 (1998) (allowing the use of multiple, gory photographs of victim's body that were admitted for different illustrative purposes), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80, 120 S. Ct. 95 (1999); *State v. Wynne*, 329 N.C. 507, 406 S.E.2d 812 (1991) (holding there was no abuse of discretion in admitting multiple pictures and testimony regarding decomposition of the body).

Defendant also argues that the photographs were not properly explained to the jury. He contends that a witness should have walked through and explained each photograph. Defendant, however, failed to make this argument to the trial court: "As has been said many times, 'the law does not permit parties to swap horses between courts in order to get a better mount,' . . . meaning, of course, that a contention not raised and argued in the trial court may not be raised and

argued for the first time in the appellate court." *Wood v. Weldon,* 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) (quoting *Weil v. Herring,* 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)), *disc. review denied,* 358 N.C. 550, 600 S.E.2d 469 (2004). Moreover, this argument cannot be reconciled with defendant's contention that these photographs were so prejudicial that they should have been excluded under Rule 403. We cannot see how defendant would have benefitted from having the photographs displayed to the jurors over a more prolonged period of time, such as would be required to provide the more detailed explanation sought by defendant on appeal. Accordingly, this assignment of error is overruled.

III

**[3]** Defendant next challenges certain statements made by the prosecutor during closing arguments. Defendant argues that the trial court erred in overruling his objection to two remarks that he contends went beyond the evidence offered at trial. Defendant further argues that the trial court erred in not acting *ex mero motu* when the prosecutor expressed a personal opinion regarding defendant's defense.[3]

During closing arguments, trial counsel is allowed "wide latitude" in his remarks to the jury and may argue the law, all the facts in evidence, and any reasonable inference drawn from the law and facts. *State v. Craig,* 308 N.C. 446, 454, 302 S.E.2d 740, 745, *cert. denied,* 464 U.S. 908, 78 L. Ed. 2d 247, 104 S. Ct. 263 (1983). N.C. Gen. Stat. § 15A-1230(a) (2003) sets forth the boundaries that counsel must adhere to during a closing argument:

> [A]n attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

The propriety of counsel's argument is left largely to the control and discretion of the trial judge, and we review any ruling by the trial court only for abuse of discretion. *State v. Roache,* 358 N.C. 243, 301, 595 S.E.2d 381, 418 (2004).

---

3. Defendant also argues that these errors violated his constitutional rights. Because he did not assert these constitutional arguments below, they are not properly before this Court. *Carpenter,* 155 N.C. App. at 41, 573 S.E.2d at 673.

STATE v. ANDERSON

[175 N.C. App. 444 (2006)]

Defendant first points to the following argument as unsupported by the evidence:

[PROSECUTOR]: So that Tuesday night, when [the victim] got a phonecall, put on her old sandals, old skirt, threw on a jacket, picked up her keys and her cell phone, probably going to meet outside and talk. *I'm going to settle this once and for all.* Go out there and talk.

[DEFENSE COUNSEL]: There's no evidence of that, Your Honor.

THE COURT: Overruled.

(Emphasis added.) Subsequently, the State made the second argument challenged by defendant as not supported by the evidence:

[PROSECUTOR]: What do you think Mr. Anderson was doing? He didn't just bring his keys and his cell phone, did he? What did he bring? A loaded .357. What kind of love is that? In his mind it was until death do us part. See, if he couldn't have her, nobody would. And he drove her out right down the street from her house. You all saw that blood on the side of the road over here. *Shot her there and drug her in the woods.*

[DEFENSE COUNSEL]: There's no evidence of that either, Your Honor. Objection.

THE COURT: She may argue any inference from the evidence.

(Emphasis added.) We believe that the State's suggestion that Adams met defendant to settle matters with him and that defendant shot Adams on the side of the road before dragging her into the woods are inferences that reasonably can be drawn from the evidence presented. Even if that were not the case, in light of the evidence, any error from the statements was harmless.

Defendant also points to the prosecutor's expression of opinion on defendant's possible theory of the case:

Now, I'm going to sit down and let you all listen to [the defense attorney]. And he'll bring up a lot of things that Ramal said that were different, not a hundred percent like he likes them. He may even try to throw out there maybe Ramal killed him. *I mean that is just crazy.* He might do that.

(Emphasis added.) Defendant argues this is an impermissible expression of the prosecutor's personal beliefs. We agree that this

remark was improper under N.C. Gen. Stat. § 15A-1230 because it expressed a personal belief as to the truth or falsity of defendant's arguments.

Because, however, defendant did not object to this comment at trial, he "must establish that the remarks were so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*." *State v. Braxton*, 352 N.C. 158, 202, 531 S.E.2d 428, 454 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797, 121 S. Ct. 890 (2001). To establish such an abuse, "defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219, 119 S. Ct. 2053 (1999). After reviewing the record, we cannot conclude that this comment rises to the level of fundamental unfairness given the evidence presented at trial. Accordingly, this assignment of error is overruled.

IV

[4] Finally, defendant argues that the trial court erred in denying his request for a jury instruction on voluntary manslaughter. Any possible error in failing to give this instruction was, however, harmless. "It is well-settled law in this state that when a jury is properly instructed on both first-degree and second-degree murder and returns a verdict of guilty of first-degree murder, the failure to instruct on voluntary manslaughter is harmless error." *State v. East*, 345 N.C. 535, 553, 481 S.E.2d 652, 664, *cert. denied*, 522 U.S. 918, 139 L. Ed. 2d 236, 118 S. Ct. 306 (1997). In this case the court instructed the jury on first degree and second degree murder, and the jury returned a guilty verdict on first degree murder. This situation is identical to *East*, and accordingly this assignment is overruled.

No error.

Judges CALABRIA and ELMORE concur.