STATE OF NORTH CAROLINA v. ROBERT NICHOLAS BOWMAN

No. COA06-463

(Filed 5 June 2007)

## 1. Evidence— photographs of murder victim—admissibility

The trial court did not abuse its discretion in a prosecution for first degree murder and armed robbery by admitting 6 frontal photographs of the victim, who had been found face down with head wounds from a brick. Many other photographs were admitted, but without needless repetition, and each photograph helped to illustrate the testimony of the investigating officer.

**2. Homicide— first-degree felony murder—evidence of defendant as perpetrator—sufficiency**

There was sufficient circumstantial evidence for a reasonable inference of defendant's guilt of a robbery and a murder from defendant's presence in the area, general statements he had made about hitting someone with a brick, defendant's statement about "hitting a lick" to obtain money for crack cocaine, a statement defendant made to another inmate, and his testimony that he had been in another town on the night of the crime.

Appeal by defendant from judgment entered 7 February 2005 by Judge C. Philip Ginn in Buncombe County Superior Court. Heard in the Court of Appeals 6 March 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*Richard B. Glazier, for defendant.*

JACKSON, Judge.

On the night of 6 January 2002, a taxicab picked up David Wayne Brown ("Brown") from the Mission Hospital emergency room, in Asheville, North Carolina. Brown asked the taxi driver to stop at a convenience store, where Brown purchased a bottle of wine. Brown then rode around in the taxi for about an hour, consuming the wine, before being dropped off at 107 Broad Street just before 11:00 p.m. When Brown left the hospital, he was wearing a coat, carrying a blue duffel bag, and had just over $120.00 in cash on his person. Brown was known around Asheville as the "Piano Man."

Shortly after 1:30 a.m. on 7 January 2002, Officer Stony Gonce ("Gonce") of the Asheville Police Department responded to a call of a possible incident of a pedestrian being hit by a car on Charlotte Street. Based upon the testimony of Gonce and others, it was well-established that Charlotte and Broad Streets intersect each other, and are not far from the location where Brown was dropped off. When Gonce arrived at the scene, he found Brown lying face down in the middle of Charlotte Street, with a serious injury to his head, and a sizeable pool of blood near Brown's head. Near Brown's body was a brick, which appeared to have blood on it. Testimony from the county medical examiner at the time of the murder showed that Brown died as a result of being hit in the head twice with a brick. Testimony also

indicated that at the time of Brown's death, his blood-alcohol level was well above the legal limit.

Defendant subsequently was arrested for Brown's murder, and was indicted on charges of first degree murder and robbery with a dangerous weapon. On 7 February 2005, a jury found defendant guilty of robbery with a dangerous weapon and first degree felony murder. Defendant was sentenced to life imprisonment without parole. He appeals from his convictions.

[1] Defendant first contends the trial court erred in overruling his objection to the admission of several photographs of Brown, which were admitted into evidence for illustrative purposes and published to the jury. Defendant argues the vivid and grotesque photographs were cumulative and unduly prejudicial, and that they added nothing to the testimony that was presented.

Evidence admitted at trial, including photographs, is subject to Rule 403 of the North Carolina Rules of Evidence, which provides that

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (2005). With regards to the admission of photographs, this Court has held that

> Pictures of a victim's body may be introduced "even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). While noting that there is no bright line test to determine what is an excessive amount of photographs, *Hennis* instructs that courts should examine the "content and the manner" in which the evidence is used and the "totality of circumstances" comprising the presentation. *Id.* at 285, 372 S.E.2d at 527. The decision as to whether evidence, including photographic evidence, is more probative than prejudicial under Rule 403 of the Rules of Evidence and what constitutes an excessive number of photographs lies within the sound discretion of the trial court. *State v. Sledge*, 297 N.C. 227, 232, 254 S.E.2d 579, 583 (1979).

*State v. Anderson,* 175 N.C. App. 444, 451, 624 S.E.2d 393, 399, *appeal dismissed and disc. review denied,* 360 N.C. 484, 632 S.E.2d 492 (2006).

At trial, the State admitted almost forty different photographs into evidence for illustrative purposes. Defendant did not object to the admission of the more than thirty photographs showing Brown lying face down at the crime scene, closeup views of Brown's serious head wounds, and photographs from Brown's autopsy. Defendant objected only to State's Exhibit 14, which consisted of six photographs showing Brown after having been rolled over onto his back by investigators. As defendant objected only to the admission of these six photographs, we hold he has failed to preserve any appeal based upon the admission of photographs to which he failed to object. N.C. R. App. P. 10(b)(1) (2006).

The six photographs at issue were of the frontal area of Brown's body. The photographs showed blood on Brown's face, scrape marks on his chin and nose, and injury to his forehead. The photographs also included a closeup shot of Brown's face and forehead, in addition to his arms, legs and feet, and moisture on his pants. At trial, Officer Stony Gonce testified that after conducting an initial investigation at the scene, officers turned over Brown's body, and the photographs constituting State's Exhibit 14 then were taken. Officer Gonce testified that the photographs would help to illustrate his testimony as to the condition of Brown once he was turned over.

Upon reviewing the photographs, along with the record and trial transcript, we hold the trial court did not abuse its discretion in allowing these six photographs to be admitted into evidence. Defendant did not object to the more than thirty other photographs of the crime scene being introduced into evidence and presented to the jury. Also, defendant did not object to a videotape of the crime scene which included shots of Brown and his injuries, being introduced and played for the jury.

Based upon all of the photographic evidence presented at defendant's trial, we hold the photographs of Brown's frontal injuries were not cumulative or excessive, as other photographs shown were of the crime scene and Brown while he was lying face down in the position in which officers found him. There was no needless repetition of photographs and the presentation of each photograph was accompanied by competent testimony of the investigating officer, which the photographic evidence helped to illustrate. As we previously have held,

STATE v. BOWMAN

[183 N.C. App. 631 (2007)]

"even though some of the pictures looked similar, the individual photographs each show a different view of the body, a different injury inflicted, and different pieces of evidence found around the body." *Anderson*, 175 N.C. App. at 451, 624 S.E.2d at 399.

In the instant case, we hold the trial court did not abuse its discretion in admitting the subject photographs into evidence. "We cannot say that the trial court's ruling was so manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *State v. Wynne*, 329 N.C. 507, 517, 406 S.E.2d 812, 817 (1991). Thus, defendant's assignment of error is overruled.

[2] Defendant next contends the trial court erred in denying his motion to dismiss the charges based upon an insufficiency of the evidence. Specifically, defendant argues there was insufficient evidence of his being the perpetrator.

In ruling upon a motion to dismiss, the trial court must determine if the State has presented substantial evidence of each essential element of the offense charged, and of defendant's being the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002). " 'Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion.' " *Id.* (quoting *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002)). In considering the motion, the trial court must view the evidence in the light most favorable to the State, affording the State the benefit of every reasonable inference which may be drawn from the evidence, and resolving any contradictions in favor of the State. *Id.* at 336, 561 S.E.2d at 256.

" 'Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.' " *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 919 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). When the evidence presented amounts to circumstantial evidence, "the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Id.* "Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then ' "it is for the jury to decide whether the facts, *taken singularly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." ' " *Id.* (emphasis in original).

At trial, testimony from three separate witnesses placed defendant in Asheville on the night of 6 January 2002, and two of the witnesses placed defendant at 120 Broad Street that night. Lionel Douglas ("Douglas") testified that on the night of 6 January 2002, he and defendant were standing on the front porch at 120 Broad Street, when the men saw a white, heavy-set man, wearing a coat, walking down Broad Street with his head down. Douglas testified that defendant then stated "Are you down with hitting that guy in the head with a brick?" Douglas stated that following defendant's comment, Douglas left. Sara Alicia Wadsworth ("Wadsworth"), who lived in the home at 120 Broad Street, also testified that defendant was at the home on the night 6 January 2002, and that she, defendant, and defendant's girlfriend walked to a nearby gas station around midnight. Wadsworth also testified that on some date in time prior to Brown's murder, she had heard defendant make a statement in which he wondered what would happen if he were to hit someone in the head with a brick.

Napoleon Thomas ("Thomas") testified that he had known defendant for several years, and that at the time of Brown's murder, both Thomas and defendant were involved in selling and using crack cocaine. Thomas stated that on 6 January 2002, defendant had been at Thomas' house in Asheville, known as "the dungeon." Testimony showed that Thomas' home is not far from the area of Broad Street where Brown was found. When Thomas saw defendant on 6 January 2002, Thomas testified that defendant did not have any money, and that defendant stated that he was going to leave Thomas' to go to his girlfriend's house on Broad Street to get more money so that he would be able to buy more crack cocaine from Thomas. Thomas stated that defendant left "the dungeon" and returned two to three hours later, after midnight on 7 January 2002. When defendant returned, he had money and crack cocaine, and when asked where he got the money, defendant told Thomas that "he hit a lick." Thomas testified that "hitting a lick" is a phrase used in connection with getting drugs, and going out and stealing or doing something in order to get money. Defendant then purchased thirty dollars worth of crack cocaine from Thomas. On later dates, Thomas asked defendant if he killed the man on Charlotte Street, to which defendant first responded that he did not kill anyone, and when asked again, defendant responded that "the lick he made, he had to hit him twice to get him down; he wouldn't stay down, but he didn't kill nobody."

Dave Tillman Webb ("Webb") testified that in June 2003, he was in a holding cell with defendant at the Buncombe County jail, following defendant's arrest for Brown's murder. Webb stated that he heard other inmates in the cell talking about the "Piano Man's" murder. He testified that defendant was walking around the cell in a nervous and agitated manner, and that defendant told the other inmates that "they got the wrong guy." Webb further testified that at one point he and defendant were alone in the holding cell, at which time defendant stated he had an alibi prepared and that he had been out of town at the time of Brown's murder. Webb testified that defendant stated, not in response to any question or statement from Webb, that "I didn't mean to kill him. I didn't mean to. I was just going to rob him."

After defendant presented testimony in which he claimed to have been in Hendersonville, North Carolina, at the time of the murder, this contradiction in the evidence was a question of fact for the jury to resolve. *See State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) ("Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal."). Based upon the evidence presented, we hold there was sufficient circumstantial evidence whereby a reasonable inference of defendant's guilt could be drawn from the evidence. As such, the trial court acted properly in denying defendant's motion to dismiss based upon an insufficiency of the evidence, and defendant's assignment of error is overruled.

No error.

Judges WYNN and STEELMAN concur.