STATE OF NORTH CAROLINA v. JAMEZ DORJAN HUNTER

No. COA10-483

(Filed 21 December 2010)

## 1. Search and Seizure— validity of warrant—incorrect address

The trial court did not err in a second-degree murder case by denying defendant's motion to suppress evidence obtained during the search of the victim's residence based on an alleged invalid search warrant. Standing alone, an incorrect address on a search warrant did not invalidate the warrant where other designations were sufficient to establish with reasonable certainty the premises, vehicles, or persons to be searched, and a description or designation of the items constituting the object of the search and authorized to be seized.

## 2. Confessions and Incriminating Statements— motion to suppress statement to law enforcement—voluntariness

The trial court did not err in a second-degree murder case by failing to suppress defendant's statement to law enforcement even though defendant contended he was under the influence of cocaine and unable to sufficiently understand what he was saying or doing. Defendant's statements were his free and voluntary acts, no promises were made to defendant, and he was not coerced in any way. Defendant was knowledgeable of his circumstances and cognizant of the meaning of his words at all times during which he was interrogated.

## 3. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—malice—perpetrator

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder. The evidence was sufficient to support the element of malice and for a jury to conclude that defendant was the perpetrator of the crime.

## 4. Sentencing— aggravating factors—offense especially heinous, atrocious, or cruel

The trial court did not err in a second-degree murder case by instructing the jury on the aggravating factor that the offense committed was especially heinous, atrocious, or cruel. A reasonable juror could determine from the evidence presented that defendant's fatal assault upon his seventy-two-year-old grandmother, whom he stabbed with a knife, struck in the head with a clothes iron, strangled with a power cord from the iron, and impaled with a golf club shaft eight inches into her back and chest, was especially heinous, atrocious, and cruel.

## 5. Criminal Law— motion for mistrial—prosecutor's improper argument not prejudicial—trial court admonition

The trial court did not err in a second-degree murder case by failing to declare a mistrial or failing to instruct the jury to disregard the prosecutor's comments during his closing argument. The prosecutor's characterization of defendant's comments as falsehoods, while improper, did not reach the level of prejudicial error which so infected the trial with unfairness as to make the resulting conviction a denial of due process. Further, the trial court's admonition to the prosecutor neutralized the improper statements.

Appeal by defendant from judgment entered 14 October 2009 by Judge W. David Lee in Union County Superior Court. Heard in the Court of Appeals 26 October 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*William D. Spence for defendant-appellant.*

BRYANT, Judge.

Because the unchallenged findings of fact indicate that defendant was not under the influence of any impairing substance and answered questions appropriately at the time of his confession, the fact that defendant ingested "crack" cocaine several hours prior to his confession is not sufficient to invalidate a trial court's finding that defendant's statements were freely and voluntarily made. For the reasons stated herein, we affirm the trial court's denial of defendant's motions to suppress evidence and his statement to law enforcement and his

motion to dismiss the first-degree murder charge. We also affirm the trial court's refusal to declare a mistrial.

On the morning of 7 May 2007, the body of seventy-two year old Rosia Hunter was found in her home at 124 West Union Street, in Marshville, by two of her young grandchildren. Ms. Hunter had been beaten about the face, strangled, and stabbed, but the cause of death was as a result of being impaled upon a golf club shaft that pierced her aorta. Missing were Ms. Hunter's vehicle and her twenty-four year old grandson, defendant Jamez Hunter.

Ten days later, on 17 May, Ms. Hunter's vehicle was discovered in Lancaster, South Carolina and her grandson located nearby. In the trunk of the vehicle, officers found a bloody shirt. In the room where defendant was found, officers discovered shoes and jeans with blood on them. The design of the shoes matched the twenty-two footprints found in the blood stains in Ms. Hunter's house. In custody, defendant spoke with agents from the North Carolina State Bureau of Investigation (SBI), Brandon Blackman and Christie Hearne. After being given his *Miranda* rights, defendant gave a signed ten page statement describing the events of the night his grandmother died. Defendant was indicted for first-degree murder and robbery with a dangerous weapon. In pre-trial motions, defendant requested that any evidence seized pursuant to the search of Ms. Hunter's home and his statement to law enforcement be suppressed. The trial court denied both motions.

Defendant was tried before a jury in Union County Superior Court and found guilty of second-degree murder. The jury also found as aggravating factors that the offense was especially heinous, atrocious, or cruel; the victim was very old; and defendant took advantage of a position of trust or confidence. Defendant was sentenced as a Level III offender in the aggravated range to a term of 276 to 341 months in the custody of the Department of Correction. Defendant appeals.

---

On appeal, defendant raises eleven issues, which comprise five arguments: Did the trial court err in denying defendant's (I) motion to suppress evidence obtained during a search of the victim's property and (II) his statement to law enforcement officers and in (III) denying defendant's motion to dismiss the murder charge. Did the trial court err in (IV) instructing the jury on the aggravating factor of heinous, atrocious or cruel and (V) failing to declare a mistrial after the prosecutor's closing remarks.

*I*

[1] Defendant argues that the trial court erred in denying his motion to suppress evidence obtained during the search of Ms. Hunter's residence. Defendant contends that the search warrant executed at the victim's residence was invalid because the application for the search warrant and the search warrant itself referenced an incorrect street address. We disagree.

Defendant acknowledges the precedent of this Court which dictates that, standing alone, an incorrect address on a search warrant will not invalidate the warrant where other " 'designation[s] [are] sufficient to establish with reasonable certainty the premises, vehicles, or persons to be searched,' and a 'description or a designation of the items constituting the object of the search and authorized to be seized.' " *State v. Moore*, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002) (quoting N.C. Gen. Stat. §§ 15A-246(4) and 15A-246(5) (2001)); *see also State v. Walsh*, 19 N.C. App. 420, 423, 199 S.E.2d 38, 40-41 (1973) (reasoning that the defendants were "requiring exactness in the description of the premises, whereas the statute only requires a description with reasonable certainty.").[1] Notwithstanding his acknowledgment, defendant nevertheless asks that we reexamine our holdings in those cases and find reversible error in the denial of his motion to suppress.

"In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State to determine whether the facts are supported by competent evidence and whether those factual findings in turn support legally correct conclusions of law." *Moore*, 152 N.C. App. at 159, 566 S.E.2d at 715 (citations omitted).

Here, the trial court made the following findings of fact:

1.  On May 7, 2007, North Carolina State Bureau of Investigation Special Agent T.A. Underwood applied for a search warrant to search, *inter alia*, the premises identified in the agent's affidavit for the warrant generally as 120 West Union Street, Marshville, North Carolina, the premises being more particularly described as the crime scene, the manner of arrival at same being to "travel east on US 74 from Wingate to Marshville. Turn left on Main Street. Turn left on North Elm

---

1. In his brief, defendant cites the relevant holdings of *Moore*, 152 N.C. App. 156, 566 S.E.2d 713, and *Walsh*, 19 N.C. App. 420, 199 S.E.2d 38.

Street and cross the railroad tracks. Turn left just past Hall's Auction house on West Union Street. Travel past two brick houses on the right." 120 West Union Street was then described in the affidavit and being "located in the curve of West Union Street and is described as a single story white vinyl siding residence with blue shutters. Attached to the front door is a set of wooden steps leading to the front door . . ."

. . .

3. With the exception of the numerical address on West Union Street, the crime scene house was otherwise as described in the application for search warrant as set forth above. To the extent that the description in the application for the warrant made reference to *a single story white vinyl residence with blue shutters, to which was attached a set of wooden steps leading to the front door*, the description in the application for the warrant is also consistent with State's . . . photograph identified as a photograph of the crime scene residence.

Based on these findings, the trial court concluded, the following:

Notwithstanding the numerical inaccuracy with respect to the street address set forth in the application for the warrant, the description of the premises in the search warrant was sufficient to support the requisite probable cause to search the premises that were in fact searched and to support the lawful seizure of the items listed on the return.

In the light most favorable to the State, it is clear that the trial court's findings of fact "are supported by competent evidence and those factual findings in turn support legally correct conclusions of law." *Id.* Therefore, we uphold the trial court's denial of defendant's motion to suppress. Defendant's argument is overruled.

*II*

[2] Next, defendant argues that the trial court erred in failing to suppress his statement to law enforcement. Defendant argues that the evidence presented and the trial court's findings of fact do not support the conclusions that defendant *knowingly*, intelligently, and understandingly waived his *Miranda* rights before speaking to law enforcement officers and then knowingly, freely, and voluntarily made a statement before Agent Blackman. Defendant contends that he was under the influence of cocaine and unable to sufficiently understand what he was saying or doing. We disagree.

**STATE v. HUNTER**

[208 N.C. App. 506 (2010)]

A trial court's findings of fact regarding the voluntary nature of an inculpatory statement are conclusive on appeal when supported by competent evidence. However, a trial court's determination of the voluntariness of a defendant's statements is a question of law and is fully reviewable on appeal. Conclusions of law regarding the admissibility of such statements are reviewed de novo.

*State v. Wilkerson*, 363 N.C. 382, 430, 683 S.E.2d 174, 203 (2009) (internal citations and quotations omitted).

"The standard for judging the admissibility of a defendant's confession is whether it was given voluntarily and understandingly. Voluntariness is to be determined from consideration of all circumstances surrounding the confession." *State v. Chapman*, 343 N.C. 495, 500, 471 S.E.2d 354, 356 (1996) (citing *State v. Schneider*, 306 N.C. 351, 355, 293 S.E.2d 157, 160 (1982)).

North Carolina follows the federal test to determine voluntariness. [*State v. Jackson*, 308 N.C. 549, 581, 304 S.E.2d 134, 152 (1983), *cert. denied*, 490 U.S. 1110, 104 L. Ed. 2d 1027, 109 S. Ct. 3165 (1989)]. The confession should be the "product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 862, 93 S. Ct. 2041 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 1057-58, 81 S. Ct. 1860 (1961)). If "one's will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Id.* at 225-26, 93 S. Ct. at 2047, 36 L. Ed. 2d at 862.

*State v. McKinney*, 153 N.C. App. 369, 373, 570 S.E.2d 238, 242 (2002). Our Supreme Court "has held that a defendant's intoxication at the time of confession does not preclude the conclusion that a defendant's statements were freely and voluntarily made." *State v. Perdue*, 320 N.C. 51, 59-60, 357 S.E.2d 345, 350-51 (1987) (citing *State v. Parton*, 303 N.C. 55, 277 S.E.2d 410 (1981), *overruled on other grounds, State v. Freeman*, 314 N.C. 432, 333 S.E.2d 743 (1985)). "An inculpatory statement is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words." *Wilkerson*, 363 N.C. at 431, 631 S.E.2d at 204 (quoting *State v. Oxendine*, 303 N.C. 235, 243, 278 S.E.2d 200, 205 (1981), *superceded by statute*, N.C.G.S. § 8C-1, Rule 607 (1983), *on other grounds as recognized in State v. Covington*, 315 N.C. 352, 357, 338 S.E.2d 310, 314 (1986)).

In *Parton*, the defendant argued that, due to "his intoxication and illness at the time of his arrest, he was unable to comprehend the reading of his constitutional rights and incapable of intelligently waiving these rights, rendering his subsequent statement inadmissible under the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966)." *Id.* at 69, 277 S.E.2d at 420. Before the trial court, the arresting officer testified that, at the time the defendant was arrested, he believed the defendant to have been intoxicated; however, the defendant "was not staggering and appeared coherent." *Id.* at 70, 277 S.E.2d at 420. "After being advised of his constitutional rights and stating that he understood them, [the] defendant . . . [stated] that he wished to confess to a murder. This statement was not made in response to police interrogation; it appeared totally unsolicited and voluntary." *Id.* Our Supreme Court affirmed the trial court's determination that, notwithstanding the defendant's intoxication, the defendant's statement was "a free, voluntary waiver of defendant's rights consistent with the requirements of *Miranda v. Arizona, supra,* as reiterated by [the] Court in *State v. Connley*, 297 N.C. 584, 256 S.E.2d 234, *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L. Ed. 327 (1979)." *Id.* at 70, 277 S.E.2d at 420-21.

Here, after an evidentiary hearing conducted on defendant's motion to suppress his statement, the trial court made the following unchallenged pertinent findings of fact: On 17 May 2007, at 11:40 p.m., SBI agents Blackmon and Hearne woke defendant and escorted him from his cell to a room with approximate dimensions of 10 feet by 12 feet; the agents did not have weapons; and defendant was not restrained. "The defendant was responsive to the agents' instructions and was fully advised of his Miranda rights, the defendant nodding affirmatively after each Miranda right was read to him." At 11:46 p.m., defendant signed a *Miranda* rights form indicating he understood his rights and waived them. When questioned as to whether he was under the influence of any alcohol or drugs, defendant "indicated that he was not under the influence of any alcohol or drugs, but that he been 'on the stem,' i.e. used crack cocaine, at around 1:00 or 2:00 p.m. that same day (May 17, 2007)." When questioned about the events of 6 May 2007, "defendant indicated that he was doing drugs," "that he 'blacked out,' and awakened to find his grandmother, Rose [sic] Hunter, dead with a golf club handle sticking from her neck and blood on him . . . ." Agent Blackmon indicated that defendant answered questions appropriately and that, after Agent Blackmon compiled a written summary of their conversation, defendant was given the statement to read and

make changes as appropriate. Both "defendant and Blackmon signed each page of the 10-page document at approximately 2:41 a.m. on May 18, 2007." "[A]t the conclusion of the interrogation there were expressions of thanks by both Blackmon (for defendant's cooperation) and the defendant, the defendant indicating that he was glad to 'get all of this off [his] chest.' " Based on these findings, the trial court concluded, and we agree, "defendant's statements were his free and voluntary acts; no promises were made to the defendant, and he was not coerced in any way. Defendant was at all times during which he was interrogated knowledgeable of his circumstances and cognizant of the meaning of his words." The trial court's findings of fact are fully supported and its conclusions legally correct. Therefore, we uphold the trial court's denial of defendant's motion to suppress his statement to law enforcement.

## III

**[3]** Next, defendant argues the trial court erred in denying his motion to dismiss the first-degree murder charge. Defendant argues the State failed to establish malice and failed to show that defendant was the perpetrator of the crime. We disagree.

"In reviewing [a] trial court's ruling on a defendant's motion to dismiss a charge of first-degree murder, this Court evaluates the evidence presented at trial in the light most favorable to the State." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (citing *State v. Walters*, 275 N.C. 615, 623, 170 S.E.2d 484, 490 (1969)). "A trial court must deny a motion to dismiss where there exists 'substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it.' " *State v. Santiago*, 148 N.C. App. 62, 69, 557 S.E.2d 601, 606 (2001) (citing *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)).

" 'Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.' " *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 919 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). When the evidence presented amounts to circumstantial evidence, "the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Id.* "Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances,

then ' "it is for the jury to decide whether the facts, taken singularly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." ' " *Id.* (emphasis in original).

*State v. Bowman*, 183 N.C. App. 631, 635, 644 S.E.2d 596, 599 (2007) (emphasis omitted).

"Malice is a condition of mind that prompts one to take the life of another intentionally, without just cause, excuse, or justification." *State v. Perdue*, 320 N.C. 51, 58, 357 S.E.2d 345, 349-50 (1987) (quoting *State v. Robbins*, 309 N.C. 771, 309 S.E.2d 188 (1983)). The intentional use of a deadly weapon which proximately results in death gives rise to the presumption the killing was done with malice. *State v. Shuford*, 337 N.C. 641, 650, 447 S.E.2d 742, 748 (1994) (citing *State v. Weeks*, 322 N.C. 152, 173, 367 S.E.2d 895, 907-08 (1988)). Applying these principles to the facts, we hold that the State presented sufficient evidence of malice. Dr. James Sullivan, who performed an autopsy on the body of the victim, testified for the State as an expert witness in the area of forensic pathology. The victim's body sustained injury from being stabbed in the torso with a golf club shaft, which entered the victim's body from the back near the base of her neck downward and forward toward the center of her chest to a depth of eight inches, where it perforated her aorta just above her heart, and from being stabbed with a knife to a depth of three inches. The victim's face sustained blunt force trauma consistent with being struck with a clothes iron. There was also evidence the victim was strangled. Dr. Sullivan testified that the perforation of Ms. Hunter's aorta by the golf club shaft was fatal. We hold the evidence presented is sufficient to support the element of malice necessary for second-degree murder. *See id.*

Defendant also contends the State failed to show that he was the perpetrator of the crime. We disagree.

Defendant testified that, on the evening of 6 May 2007, his grandmother talked to him about getting a job, keeping a job, and "hanging around the people I was hanging around . . . [and] that she was just disappointed in me or whatever. So I got up and I went in the bathroom and I took the Ecstacy pill and smoked a few pieces of crack." Later, defendant "went back in the bathroom to smoke some more crack." Defendant testified that he "got kind of light headed," "disoriented," and "that's the last thing I remember before I came to."

When I came to, I was sitting on the kitchen floor up against the refrigerator. I had blood all over me, blood all over the floor and my grandmother was laying there on the floor. . . . Well, I shook her to see if I could get a response and about that time I noticed the golf club in her back. And I—I—I knew she was dead. . . . I took her car keys and the money and left.

Defendant sustained cuts on his hands that were still visible when SBI agents interviewed him more than ten days after Ms. Hunter was killed. SBI Special Agent Karen Winningham, a forensic biologist, testified that neither the DNA of defendant nor Rosia Hunter could be excluded from the DNA sample taken from the power cord attached to the iron. Further, DNA taken from blood stains on defendant's jeans matched Rosia Hunter's DNA. The SBI analyzed twenty-two shoe prints found in blood spatter in Ms. Hunter's residence. Of the twenty-two impressions analyzed, eight impressions were consistent with the pattern on the bottom of defendant's right shoe and fourteen were consistent with the pattern on the bottom of defendant's left shoe. Defendant's jeans and shoes were discovered in the place he stayed while in Lancaster. There was no evidence presented that anyone other than defendant was in Ms. Hunter's residence at the time she was killed. Therefore, we hold this evidence sufficient for a jury to conclude that defendant was the perpetrator of the crime. Defendant's arguments are overruled.

*IV*

[4] Defendant next contends that the trial court erred in instructing the jury on the aggravating factor that the offense committed was especially heinous, atrocious, or cruel because the evidence at trial was insufficient to support such an instruction. We disagree.

"The State bears the burden of proving, by a preponderance of the evidence, that an aggravating factor exists." *State v. Harrison*, 164 N.C. App. 693, 696, 596 S.E.2d 834, 837 (2004) (citing *State v. Radford*, 156 N.C. App. 161, 164, 576 S.E.2d 134, 136 (2003)).

"In determining whether the evidence is sufficient to support the trial court's submission of the especially heinous, atrocious, or cruel aggravator, we must consider the evidence 'in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom.' " *State v. Flippen*, 349 N.C. 264, 270, 506 S.E.2d 702, 706 (1998) (quoting [*State v. Lloyd*, 321 N.C. 301, 319, 364 S.E.2d 316, 328, *sentence vacated on other*

*grounds,* 488 U.S. 807 102 L. Ed. 2d 18 (1988)]), *cert. denied,* [526 U.S. 1135, 143 L. Ed. 2d 1015] (1999). "Contradictions and discrepancies are for the jury to resolve; and all evidence admitted that is favorable to the State is to be considered." [*State v. Robinson,* 342 N.C. 74, 86, 463 S.E.2d 218, 225 (1995), cert. denied, 517 U.S. 1197, 134 L. Ed. 2d 793, 116 S. Ct. 1693 (1996)].

*State v. Brewington,* 352 N.C. 489, 525, 532 S.E.2d 496, 517 (2000) (quoting *State v. McNeil,* 350 N.C. 657, 693, 518 S.E.2d 486, 508 (1999)).

From the evidence presented a reasonable juror could determine that defendant's fatal assault upon his seventy-two year old grandmother whom he stabbed with a knife, struck in the head with a clothes iron, strangled with a power cord from the iron and impaled with a golf club shaft eight inches into her back and chest was especially heinous, atrocious and cruel.

Following the jury's determination of guilt, the trial court instructed as follows:

If you find from the evidence beyond a reasonable doubt that the offense was especially heinous, atrocious or cruel, the victim was very old, the defendant took advantage of a position of trust or confidence, which includes a domestic relationship, to commit the offense then you will write yes in the space after the aggravating factor on the verdict sheet.

Viewed in the light most favorable to the State and granting every reasonable inference to be drawn therefrom, we hold there was sufficient evidence presented to support the trial court's submission of the heinous, atrocious, or cruel aggravating factor.

V

[5] Last, defendant argues that the trial court erred in failing to declare a mistrial or failing to instruct the jury to disregard the prosecutor's comments during the prosecutor's closing argument. We disagree.

Our Supreme Court "has firmly established that 'trial counsel are granted wide latitude in the scope of jury argument, and control of closing arguments is in the discretion of the trial court.' " *State v. Thomas,* 350 N.C. 315, 360, 514 S.E.2d 486, 513 (1999) (quoting *State v. Soyars,* 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992)).

"[F]or an inappropriate prosecutorial comment to justify a new trial, it 'must be sufficiently grave that it is prejudicial [error].' "

*State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487-88 (1992) (quoting *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977) (alteration in original)). "In order to reach the level of 'prejudicial error' in this regard, it now is well established that the prosecutor's comments must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *State v. Green*, 336 N.C. 142, 186, 443 S.E.2d 14, 40 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974))), *cert. denied*, 513 U.S. 1046 (1994). However, [our Supreme] Court has held that when the trial court instructs the jury to disregard improper arguments and instructs counsel to confine his arguments to those matters contained in evidence, such an instruction renders the error caused by the improper arguments cured. *See State v. Sanders*, 303 N.C. 608, 618, 281 S.E.2d 7, 13, *cert. denied*, 454 U.S. 973 (1981).

*State v. Peterson*, 361 N.C. 587, 607, 652 S.E.2d 216, 229-30 (2007). Moreover, "a trial court does not commit reversible error when it fails to give a curative jury instruction absent a request by defendant." *State v. Williams*, 350 N.C. 1, 24, 510 S.E.2d 626, 641 (1999) (citing *State v. Norwood*, 344 N.C. 511, 537, 476 S.E.2d 349, 361 (1996); *State v. Rowsey*, 343 N.C. 603, 628, 472 S.E.2d 903, 916 (1996)).

Here, defendant challenges several of the prosecutor's statements made during closing arguments. In describing the moment when defendant was first arrested, the prosecutor stated that when police officers from the Lancaster, South Carolina found Rosia Hunter's vehicle, "they started looking for the defendant, they started asking around. And they found him. Only when they found him the defendant said his name was Jason, the first of many lies offered by the defendant." Defendant objected, and the trial court cautioned the prosecutor to "stay within the bounds of the evidence presented." The prosecutor went on to state to the jury

there was a reason that I was feverishly taking notes while the defendant was up on the stand, or any other witness, and that was because I wanted to capture for you as accurately as possible what was said and to remind you of what was said. The defendant lied.

Again, defendant objected. The trial court sustained the objection and admonished the prosecutor: "[d]on't characterize the evidence in that manner." Later, the following exchange occurred:

STATE v. HUNTER

[208 N.C. App. 506 (2010)]

Prosecutor: Motive is not an element of the crime, it is not something that we are required to prove to you, yet I want to talk about it for a second because human nature wants to know why. . . . [H]e said that he took the money, at least a hundred dollars, which he promptly went out and spent. On what? Crack. Drugs, more money for the drugs, anger, frustration that she has threatened to kick him out.

Now, remember that I talked about the lies that have been told.

Defendant: Objection to the lies, Your Honor.

The Court: All right. I am going to sustain it as to that characterization.

. . .

I caution counsel again, don't use that term.

The prosecutor's characterization of defendant's comments as falsehoods, while clearly improper, do not appear to have reached the level of prejudicial error which "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Peterson*, 361 N.C. at 607, 652 S.E.2d at 230. Further, the trial court's admonition to the prosecutor in effect neutralized the improper statements. Accordingly, defendant's argument is overruled.

Affirmed as to the motions to suppress.

No error as to the trial.

Judges STEELMAN and ERVIN concur.