STATE OF NORTH CAROLINA v. JAMES CHRISTOPHER STITT, DEFENDANT

No. COA09-90

(Filed 8 December 2009)

## 1. Indictment and Information— short-form indictment— sufficient—first-degree murder

A short-form indictment notified defendant that he was being charged with first-degree murder and set out the requisite elements pursuant to N.C.G.S. § 15-144. Specifically alleging premeditation and deliberation is not required.

## 2. Appeal and Error— admission of evidence—no findings at suppression hearing—review de novo

The trial court's legal determination that telephone records were admissible was reviewed *de novo* on appeal where neither party presented evidence pertaining to the suppression motion, no findings of fact were made, and defendant did not assign error to the trial court's failure to make findings.

## 3. Constitutional Law— Fourth Amendment standing—mere possession of property

A first-degree murder defendant did not have standing to assert Fourth Amendment violations in the admission of cellular telephone records where the telephones found in defendant's possession were owned by one of the victims. Neither ownership nor a possessory interest will be assumed from mere possession.

**4. Evidence— telephone records—federal violations in obtaining—no suppression remedy**

Even if the State violated the federal Stored Communications Act in obtaining telephone records in a first-degree murder prosecution, there is no suppression remedy under federal law.

**5. Appeal and Error— preservation of issues—argument not raised at trial—not considered**

An argument concerning the necessity of a subpoena to secure telephone records was not considered on appeal where it was not raised at trial.

**6. Evidence— photographs of crime scene—admissible**

Four photographs of first-degree murder victims at the crime scene were properly admitted where the photos showed different perspectives on the crime scene, focused on different pieces of evidence, twenty-three other photographs were admitted without objection, and the photos were used for illustrative purposes only and not to inflame the jury.

**7. Homicide— second-degree murder—deadly weapon—heat of passion**

The trial court did not err by denying defendant's motion to dismiss a second-degree murder charge where defendant used a deadly weapon but there was some evidence of heat of passion. That evidence converts the presumption of malice raised by the use of a deadly weapon to a permissible inference and does not mean that the State failed to present sufficient evidence of second-degree murder.

**8. Homicide— first-degree murder—premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of premeditation and deliberation, and the court correctly denied defendant's motion to dismiss a first-degree murder charge, where the evidence showed a time for reflection during which defendant decided to return to the victims' home, and that this victim was shot twice at close range, which required multiple trigger pulls.

**9. Homicide— first-degree murder—voluntary manslaughter instruction—not given**

The trial court did not err by refusing to instruct the jury on voluntary manslaughter in a first-degree murder prosecution

STATE v. STITT

[201 N.C. App. 233 (2009)]

where defendant relied on precedent involving provocation and a disposition that did not cool. Here, there was a time lapse between defendant's argument with the victims and the shootings and testimony that defendant shot this victim because she was screaming and not because of the prior altercation.

**10. Robbery— murder—continuous transaction**

Two killings and a robbery occurred in one continuous transaction, and the trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon, where there was substantial evidence that defendant used a deadly weapon to kill the victims and took their property not as an afterthought but with the intent of utilizing and selling it.

**11. Robbery— taking of property—no intent to return**

There was sufficient evidence in a robbery and murder prosecution to show that defendant took an automobile and other property out of state with no intent of returning them.

**12. Criminal Law— flight—evidence sufficient**

There was sufficient evidence for an instruction on flight after two murders and robberies where defendant claimed that traveling to New York was his standard practice but he varied his normal behavior in this case. Other reasonable explanations for defendant's conduct do not render the instruction improper; flight is merely evidence of guilt, not a presumption.

Appeal by defendant from judgments entered 15 May 2008 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 14 September 2009.

*Attorney General Roy A. Cooper, III, by Assistant Solicitor General John F. Maddrey, for the State.*

*William D. Spence for defendant-appellant.*

HUNTER, Robert C., Judge.

On or about 5 February 2005, Jenna Bologna ("Bologna") and George Katsigiannis ("Katsigiannis") were fatally shot with a handgun in Cumberland County, North Carolina. On 13 June 2005, James Christopher Stitt ("defendant") was indicted on charges of robbery with a dangerous weapon and two counts of first degree murder in

connection with the deaths of Bologna and Katsigiannis. On 8 May 2008, defendant was convicted by a jury of first degree murder of Bologna, second degree murder of Katsigiannis, and robbery with a dangerous weapon. After careful review, we find no error.

## Background

### A. Fayetteville, North Carolina

The State presented evidence at trial tending to show that defendant lived with Bologna and Katsigiannis in Fayetteville, North Carolina at the time of their deaths. On 4 February 2005, at approximately 9:00 p.m., defendant, Katsigiannis, Bologna, Alexandria Hosborough ("Alexandria"), and Samantha Callahan, went to the home of Nina Hosborough ("Nina") to look at a set of custom wheels for sale. They left Nina's house at approximately 11:00 p.m.

The following day, 5 February 2005, defendant drove Katsigiannis' car to Alexandria's house to return books she left in the car the previous night. Defendant told Alexandria that he was going to Virginia and requested directions to Interstate 95. Later that day, defendant called Alexandria from Katsigiannis' cellular telephone. He called her again from that telephone the following night from New York. Defendant also used Katsigiannis' telephone to call his girlfriend, Bonnie Tam ("Tam") to inform her that he was on his way to New York.

On 7 February 2005, Katsigiannis did not report to physical training at Fort Bragg where he was stationed with the U.S. Army. Adam Altimus ("Altimus") and Jacob Cymbala ("Cymbala"), members of Katsigiannis' military unit, were concerned and went to his house to check on him. Altimus also called Katsigiannis' telephone, but did not get an answer. Altimus and Cymbala then left the house without ever entering the home or making contact with Katsigiannis. Joseph Bishop ("Bishop") also visited Katsigiannis' house that same day and did not receive an answer when he knocked on the front door.

The next day, Katsigiannis still did not report for physical training. Bishop called Katsigiannis' cellular telephone twice that morning and defendant answered on the second attempt. Bishop asked defendant if he knew where Katsigiannis was, and defendant told Bishop that Katsigiannis was at home in Fayetteville, and that defendant was in New York.

Thereafter, Altimus, Bishop, and Cymbala went back to Katsigiannis' house. They peered into a window and saw what

**STATE v. STITT**

[201 N.C. App. 233 (2009)]

appeared to be a foot on the floor. The men immediately notified their superiors, Sergeant Bruce and Chief Davis, of what they saw. Upon arriving and looking through the window, Sergeant Bruce opened the back door to the residence with a credit card so they could search the house for Katsigiannis. Bologna's body was found in the master bedroom, and Katsigiannis' body was found lying on the floor of the master bathroom.

At the scene, detectives found three fired shell casings from a .45 caliber handgun in the master bedroom. One was found on the floor, another was found behind the bed's headboard, and the last shell casing was found on the bed. The detectives also found a fired bullet inside the pillow where it was believed Bologna's head had been resting. Later investigations indicated that Katsigiannis bought a .45 caliber handgun from a pawn shop in Cumberland County on 1 February 2005.

While at the scene of the crime on 8 February 2005, a local Fayetteville law enforcement officer called Katsigiannis' cellular telephone. Defendant answered the telephone and told the police that he was in Brooklyn, near a park at the intersection of 79th Street and Shore Road. After inquiring about Katsigiannis' car, defendant told the police that Katsigiannis allowed him to borrow his car and cellular telephone.

## B. Brooklyn, New York

Defendant arrived at Tam's house in Brooklyn, New York around 9:00 p.m. on 5 February 2005. Tam was the only person to testify at trial regarding the events leading up to the murders, which she claimed were told to her by defendant. Tam testified that once she and defendant were together in New York, defendant told her that "George and Jenna [were] dead." Defendant explained to Tam that he and Bologna began arguing because she was bothering him while he was watching television. Defendant said that Bologna began smacking him, so he hit her, knocking out a tooth. Katsigiannis observed the incident, then left the room. Defendant suspected that he was going to get his gun, so defendant ran out of the back door. By this time, Katsigiannis was already shooting at him but stopped once defendant reached the woods at the rear of the house. Katsigiannis then dropped the gun and went back inside the house. Defendant claimed that he retrieved the gun from the ground and entered the house with it. Defendant told Tam that he shot Katsigiannis first in the chest and then proceeded to shoot Bologna in the head and chest because she was screaming.

While in New York, defendant and Tam drove to Owls Park. When they arrived at the park, defendant showed Tam a box with a gun inside and stated, "[t]his was the gun." Tam and defendant laid the box containing the gun under a tree and covered it with an article of clothing and a pillow they found in the park.

On 9 February 2005, a Brooklyn detective contacted Tam regarding the murder investigation, and she gave a statement at the police station. Tam also led police to Owls Park where the gun was located. Tam later testified that defendant had DVDs in the car with him when he arrived in New York. Subsequently, when defendant was arrested, officers found the cellular telephone belonging to Katsigiannis on defendant's person.

Telephone records confirmed time and place testimonies by various witnesses. An expert in toolmarks and firearms testified that all three of the cartridge casings found at Katsigiannis' home, as well as the bullet retrieved from Bologna's body, were fired from Katsigiannis' gun.

No evidence was offered by defendant. Defendant was found guilty of first degree murder of Bologna, second degree murder of Katsigiannis, and robbery with a firearm. Defendant was sentenced to life imprisonment without parole for the first degree murder conviction, 189 months to 236 months imprisonment for the second degree murder conviction, and 77 to 100 months imprisonment for the robbery with a firearm conviction.

## Analysis

### I. Short-Form Indictment

[1] Defendant first argues that the trial court erred in refusing to dismiss the short-form indictment because the indictment did not include the requisite elements of premeditation and deliberation to charge him with first degree murder, nor did it allege the elements of felony murder. Consequently, defendant claims that the trial court was deprived of jurisdiction.

North Carolina Courts have "consistently held that the short-form first-degree murder indictment serves to give a defendant sufficient notice of the nature and cause of the charges against him or her." *State v. Squires*, 357 N.C. 529, 537, 591 S.E.2d 837, 842 (2003), *cert. denied*, 541 U.S. 1088, 159 L. Ed. 2d 252 (2004). N.C. Gen. Stat. § 15-144 (2007) expressly states, "it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his mal-

ice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law[.]" Specifically alleging premeditation and deliberation is not required by the statute. *Id.*

The indictment at issue stated that "on or about the 5th day of February, 2005, in the County named above the defendant named above unlawfully, willfully and feloniously did of malice aforethought kill and murder George Daniel Katsigiannis. This act was in violation of North Carolina General Statues Section 14-17." Here, the indictment notified defendant that he was being charged with first degree murder and set out the requisite elements pursuant to N.C. Gen. Stat. § 15-144.

Defendant acknowledges that this issue has been decided against him. *State v. Avery*, 315 N.C. 1, 14, 337 S.E.2d 786, 793 (1985) (holding, "[t]he indictment in question complies with the short form indictment authorized by [N.C. Gen. Stat. §] 15-144 and is therefore sufficient to charge first degree murder without specifically alleging premeditation and deliberation or felony murder"); *State v. Braxton*, 352 N.C. 158, 175, 531 S.E.2d 428, 438 (2000); *State v. Smith*, 152 N.C. App. 29, 34, 566 S.E.2d 793, 797, *cert. denied*, 356 N.C. 311, 571 S.E.2d 208 (2002).

Nevertheless, defendant asks us to reexamine the issue. "As we are bound by the decisions of the Supreme Court, as well as those already decided by other panels of this Court, we refuse to do so. Accordingly, we overrule th[is] assignment[] of error." *Smith*, 152 N.C. App. at 34, 566 S.E.2d at 797 (citations omitted).

## II. Suppression of Telephone Records

[2] Defendant also appeals the trial court's denial of his motion to suppress the cellular telephone records obtained by the State.[1] Defendant presents three arguments on appeal: (1) the trial court erred in determining that defendant did not have standing to assert a violation of his Fourth Amendment rights; (2) the State failed to comply with federal law when it sought a court order to obtain the records; and (3) the State violated state law in obtaining the records without a subpoena.[2]

"In reviewing a trial court's ruling on a motion to suppress, we first determine whether the trial court's findings of fact are supported

---

1. The record indicates that defendant was in possession of two telephones registered in Katsigiannis' name.

2. The court order is not provided in the record on appeal.

by competent evidence." *State v. Bowden*, 177 N.C. App. 718, 721, 630 S.E.2d 208, 210 (2006). Here, the trial court received a written motion to suppress from defendant and heard arguments from the parties prior to opening statements at trial; however, the trial court made no findings of fact.

> When the trial court conducts an evidentiary hearing regarding the competency of the evidence, the trial court is required to make findings of fact if there is a conflict in the evidence. When, however, there is no conflict in the evidence, findings are not required, although it is preferable for the trial court to make them.

*Id.* (citations and quotation marks omitted). Defendant does not assign error to the trial court's failure to make findings of fact. In fact, no evidence was presented by either party pertaining to the motion; however, defendant submitted an affidavit attached to his written motion in which he claimed a "possessory and privacy interest in the information sought" by the State and further alleged a violation of federal law. Since no findings of fact were made, we will only review *de novo* the trial court's legal determination that the records were admissible. *State v. Wilkerson*, 363 N.C. 382, 434, 683 S.E.2d 174, 205 (2009).

**[3]** First, we address defendant's claim that he had standing to assert a Fourth Amendment violation. Defendant argued before the trial court that his possession of the cellular telephones was sufficient to establish a reasonable expectation of privacy in the records. Upon hearing arguments by defense counsel and the State, the trial court stated: "[A] defendant making a motion like the motion now before the Court bears the burden of establishing that he, separate and apart from any affidavit, gained possession from the owner or someone with authority to grant possession[.]" The trial court ultimately concluded that defendant did not have standing to assert a Fourth Amendment violation. We agree.

"In order to challenge the reasonableness of a search or seizure, defendant must have standing. Standing requires *both* an ownership or possessory interest *and* a reasonable expectation of privacy." *State v. Swift*, 105 N.C. App. 550, 556, 414 S.E.2d 65, 68-69 (1992) (emphasis added); *accord State v. McKinney*, 361 N.C. 53, 56, 637 S.E.2d 868, 871 (2006) ("A defendant has standing to contest a search if he or she has a reasonable expectation of privacy in the property to be searched.").

STATE v. STITT

[201 N.C. App. 233 (2009)]

To be entitled to the protections of the Fourth Amendment, defendant 'must demonstrate that any rights alleged to have been violated were his rights, not someone else's.' Generally, a defendant may not object to the search and seizure of the property of another. 'The burden of showing this ownership or possessory interest is on the person who claims that his rights have been infringed.'

*State v. Boyd*, 169 N.C. App. 204, 206-07, 609 S.E.2d 785, 787 (2005) (quoting *State v. Mlo*, 335 N.C. 353, 377-78, 440 S.E.2d 98, 110-11, *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994)).

Here, defendant offered no evidence at the suppression hearing, and points to none on appeal, to demonstrate that he had an ownership interest in the cellular telephones or had been given a possessory interest by the legal owner. Defendant only maintained that he had possession of the telephones and consequently an expectation of privacy in the records related to those telephones. Defendant did not go so far as to claim that Katsigiannis lent him the telephones. Our Courts will not assume ownership or a possessory interest in property based on mere possession. *Id.* at 207, 609 S.E.2d at 787 (recognizing that a "temporary use of property does not automatically create an expectation of privacy in that property"). In sum, defendant did not meet his burden of establishing an ownership or possessory interest in the telephones. Accordingly, the trial court did not err in determining that defendant lacked standing to claim a Fourth Amendment violation.[3]

**[4]** Second, we address defendant's claim that the State violated federal law in obtaining the records. Defendant asserts that when the Cumberland County Sheriff's Office sought court authorization to obtain the records, they did not fully comply with 18 U.S.C. § 2703(d) (2006) of the Stored Communications Act, which governs disclosure of customer communications or records and states in pertinent part:

A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication,

---

3. Having found that defendant did not have standing to assert a Fourth Amendment violation due to a lack ownership or possessory interest in the telephones, we need not address whether any expectation of privacy was in fact reasonable, or whether that expectation was violated.

or the records or other information sought, are relevant and material to an ongoing criminal investigation.

Specifically, defendant argues that when the State obtained the court order requiring Nextel to release the telephone records, the State failed to establish that the records were relevant and material to an ongoing criminal investigation. Defendant claims that the trial court failed to reach the issue of whether the records were unlawfully obtained under federal statute and instead concentrated on the Constitutional standing of defendant to raise the Fourth Amendment claim. Defendant is correct in that the trial court did not make any conclusions of law specifically pertaining to this portion of defendant's claim; however, we review *de novo* the legal determination to deny the motion.

There is no evidence in the record regarding the State's conduct in this matter. Nevertheless, assuming *arguendo* that the State did not fully comply with 18 U.S.C. 2703(d), there is no suppression remedy under federal law. 18 U.S.C. § 2707(a) (2006) provides that a party "aggrieved" by a violation of the Act may pursue a civil remedy against "the person or entity, other than the United States, which engaged in that violation . . . ." 18 U.S.C. § 2708 (2006) states, "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."

The United States District Court for the District of Columbia analyzed the same issue presently before this Court and held that even if the State does not comply with the provisions of the Stored Communications Act, "the statute does not provide for a suppression remedy." *United States v. Ferguson*, 508 F.Supp. 2d. 7, 10 (D.D.C. 2007); *see also United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (holding that "the Stored Communications Act does *not* provide an exclusion remedy. It allows for civil damages . . . and criminal punishment . . . but nothing more"), *superseded on other grounds*, *Konop v. Hawaiian Airlines, Inc.*, 236 F.3d 1035 (9th Cir. 2001).[4] Upon review of the Act and relevant case law, we hold that the trial court did not err in suppressing the telephone records despite an alleged violation of 18 U.S.C. § 2703(d).

**[5]** Finally, defendant asserts that N.C. Gen. Stat. § 15A-298 (2007) requires a subpoena to secure telephone records, and since no sub-

---

4. In his criminal law treatise, Professor Robert Farb notes that "[a] violation of federal law does not require the exclusion of evidence at a criminal trial." Robert L. Farb, *Arrest, Search, and Investigation in North Carolina*, 106 n. 129 (3rd ed. 2003).

poena was issued in this case, the evidence should have been suppressed pursuant to N.C. Gen. Stat. § 15A-974(2) (2007) (stating that evidence must be suppressed if "[i]t [was] obtained as a result of a substantial violation of the provisions of [Chapter 15]"). Defendant did not raise this argument before the trial court, and we will not consider it on appeal. N.C. R. App. P. 10(b)(1); *see also State v. Barnard,* 184 N.C. App. 25, 33, 645 S.E.2d 780, 785 (2007), *aff'd,* 362 N.C. 244, 658 S.E.2d 643 (2008).

### III. Introduction of Photographs

[6] Next, defendant argues that the trial court erred in allowing the State to introduce into evidence four photographs of the deceased victims at the crime scene. Defendant filed a motion *in limine* claiming that the photographs were unnecessarily gruesome and carried no probative value. The trial court considered the matter at trial. The State selected thirty crime scene photographs, from over one hundred taken, to present to the jury. Defendant objected to seven of the proffered photographs, and upon review of the photographs and the State's arguments concerning each one, the trial court excluded three of the photographs but allowed the State to introduce the other four. The State claims that the photographs were relevant to illustrate testimony concerning the location of a fired cartridge case in relation to Bologna's body, the hole in the pillow where Bologna's head was resting, the position of Katsigiannis' body on the bathroom floor, and to provide a different angle so that the jury could clearly see what Katsigiannis was wearing at the time of his death.

"In determining whether to admit photographic evidence, the trial court must weigh the probative value of the photographs against the danger of unfair prejudice to defendant [pursuant to Rule 403 of the North Carolina Rules of Evidence]." *State v. Blakeney,* 352 N.C. 287, 309, 531 S.E.2d 799, 816 (2000). Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). "We review a trial court's decision to [admit or] exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley,* 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008). "An abuse of discretion results when 'the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *State v. Peterson,* 361 N.C. 587, 602-03, 652 S.E.2d 216, 227 (2007)).

It is well established that " '[p]hotographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitive use is not aimed solely at arousing the passions of the jury.' " *Blakeney*, 352 N.C. at 309-10, 531 S.E.2d at 816 (quoting *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988)); *see also State v. Porth*, 269 N.C. 329, 337, 153 S.E.2d 10, 16 (1967); *State v. Curtis*, 7 N.C. App. 707, 709, 173 S.E.2d 613, 615 (1970); *State v. McCain*, 6 N.C. App. 558, 562, 170 S.E.2d 531, 533 (1969).

" 'A photograph of the scene of a crime may be admitted into evidence if it is identified as portraying the locale with sufficient accuracy.' " *State v. Haselden*, 357 N.C. 1, 14, 577 S.E.2d 594, 603 (quoting *State v. Smith*, 300 N.C. 71, 75, 265 S.E.2d 164, 167 (1980)), *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382 (2003). "Even where a body is in advanced stages of decomposition and the cause of death and identity of the victim are uncontroverted, photographs may be exhibited showing the condition of the body and its location when found." *State v. Wynne*, 329 N.C. 507, 517, 406 S.E.2d 812, 816-17 (1991).

The case of *State v. Bowman*, 183 N.C. App. 631, 644 S.E.2d 596, *cert. denied*, 361 N.C. 570, 650 S.E.2d 816 (2007), is analogous in many respects to the present case. There, the State presented more than thirty photographs of the victim's body without objection by defendant. *Id.* at 634, 644 S.E.2d at 598. Defendant only objected to six photographs, which showed the victim in a different position than in the other photographs. *Id.* This Court found no abuse of discretion and reasoned that: (1) defendant failed to object to numerous other photographs of the crime scene; (2) the challenged photographs showed a different perspective of the scene and different pieces of evidence than the other photographs admitted; and (3) the photographs were meant to illustrate the testimony of the investigating officer. *Id.* at 634, 644 S.E.2d at 599.

Here, defendant did not object to the other twenty-three photographs of the crime scene, and the four he did object to depicted different perspectives of the crime scene and focused on different pieces of evidence. Moreover, we find that the State made use of the photographs in conjunction with testimony for illustrative purposes only and that the photographs were not used to inflame the jury's passions. Accordingly, we find no error in the admission of the four photographs to which defendant objected.

IV.  Sufficient Evidence to Establish Murder of Katsigiannis

**[7]**  Defendant argues that the trial court erred in denying his motion to dismiss the charge of second degree murder of Katsigiannis at the close of the State's evidence (being all the evidence) on the grounds that the evidence was insufficient to establish every element of the crime. The trial court submitted to the jury the charges of first degree murder, second degree murder, and voluntary manslaughter.

> In determining the sufficiency of the evidence to withstand a motion to dismiss and to be submitted to the jury, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. Substantial evidence is such relevant evidence as is necessary to persuade a rational juror to accept a conclusion. The trial court must review the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom.

*Squires*, 357 N.C. at 535, 591 S.E.2d at 841 (citations and quotation marks omitted).

"Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Foust*, 258 N.C. 453, 458, 128 S.E.2d 889, 892 (1963) (citations omitted). Our Supreme Court has held that the " '[i]ntent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice.' " *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000) (quoting *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991)). In this State, malice is implied when the perpetrator uses a deadly weapon to commit the murder. *State v. Reynolds*, 307 N.C. 184, 190, 297 S.E.2d 532, 535-36 (1982); *State v. West*, 180 N.C. App. 664, 668, 638 S.E.2d 508, 511 (2006), *appeal dismissed and disc. review denied*, 361 N.C. 368, 644 S.E.2d 562 (2007).

"The effect of the presumption is to impose upon the defendant the burden of going forward with or producing some evidence of a lawful reason for the killing or an absence of malice; *i.e.*, that the killing was done in self-defense or in the heat of passion upon sudden provocation." *Reynolds*, 307 N.C. at 190, 297 S.E.2d at 536 (quoting *State v. Simpson*, 303 N.C. 439, 451, 279 S.E.2d 542, 550 (1981)). "Even though such an inference is permissible, the State

continues to bear the burden of showing defendant committed an unlawful killing." *State v. Banks*, 191 N.C. App. 743, 751, 664 S.E.2d 355, 361 (2008).

> Evidence raising an issue on the existence of malice and unlawfulness causes the presumption to disappear, "leaving only a permissible inference which the jury may accept or reject." Furthermore, if there is any evidence of heat of passion on sudden provocation, either in the State's evidence or offered by the defendant, the trial court must submit the possible verdict of voluntary manslaughter to the jury.

*State v. Weeks*, 322 N.C. 152, 173, 367 S.E.2d 895, 907-08 (1988) (quoting *Reynolds*, 307 N.C. at 190, 297 S.E.2d at 536).

Here, defendant argues that Tam's testimony established that heat of passion existed in lieu of malice. Tam testified that defendant and Bologna were arguing, the disagreement escalated, and the two struck each other. Katsigiannis then attempted to shoot defendant, but he escaped into the woods. Katsigiannis put the gun down, and returned to the house. Defendant remained in the woods for an unspecified amount of time, and then retrieved Katsigiannis' gun, went back into the house, and shot Katsigiannis and then Bologna at close range. Though defendant claims that the evidence established that he killed in the heat of passion, there was sufficient evidence presented that defendant unlawfully murdered Katsigiannis with malice.

The trial court chose to instruct the jury on second degree murder and voluntary manslaughter of Katsigiannis, which implies that the trial court found that there was sufficient evidence to convict defendant of either crime. Just because there was some evidence of heat of passion does not mean that the State failed to present sufficient evidence to establish the elements of second degree murder. Because there was evidence of heat of passion, the presumption of malice became a "permissible inference" and the trial court was thus required to instruct the jury on both crimes, which it did in this case. *Id.*

In sum, viewing the evidence in the light most favorable to the State, there was sufficient evidence to establish all elements of second degree murder. Therefore, this assignment of error is without merit.

## V. Sufficient Evidence to Establish Murder of Bologna

[8] Defendant argues that the trial court erred in denying defendant's motion to dismiss the charge of first degree murder of Bologna on the grounds that the evidence was insufficient to establish every element of the crime. Defendant specifically asserts that the State failed to establish that defendant intentionally killed Bologna with premeditation and deliberation. The trial court instructed the jury on first degree murder and second degree murder.

"First-degree murder is the unlawful killing of another human being with malice and with premeditation and deliberation." *State v. Tirado*, 358 N.C. 551, 591, 599 S.E.2d 515, 542 (2004); N.C. Gen. Stat. § 14-17 (2007).

A killing is premeditated if "the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing." A killing is deliberate if the defendant acted "in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation."

*State v. Rios*, 169 N.C. App. 270, 280, 610 S.E.2d 764, 771 (2005) (quoting *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991)). "Premeditation and deliberation 'are usually proven by circumstantial evidence because they are mental processes that are not readily susceptible to proof by direct evidence.'" *State v. Mack*, 161 N.C. App. 595, 605, 589 S.E.2d 168, 175 (2003) (quoting *State v. Sierra*, 335 N.C. 753, 758, 440 S.E.2d 791, 794 (1994)).

According to Tam's testimony, defendant killed Bologna after advancing from his hide-out in a wooded area, going back into the home, and shooting Katsigiannis. Thus, the evidence showed a time lapse for reflection during which defendant decided to go back into the home armed with Katsigiannis' gun. Additionally, forensic evidence showed that Bologna was shot twice at close range, which required multiple pulls of the trigger. *Id.* (the defendant's act of shooting the victim twice at close range was circumstantial evidence of premeditation and deliberation); *State v. LaPlanche*, 349 N.C. 279, 283, 507 S.E.2d 34, 36 (1998) (the defendant's act of shooting the victim four times in the head at close range was circumstantial evidence of premeditation and deliberation).

Based on the evidence presented at trial, we find no error in the trial court's denial of defendant's motion to dismiss the charge of first degree murder with regard to Jenna Bologna, as there was sufficient evidence, viewed in the light most favorable to the State, to establish each element of the charge.

## VI.   Failure to Submit the Charge of Voluntary Manslaughter of Bologna to the Jury

**[9]** Defendant argues that the trial court erred in refusing to instruct the jury on the charge of voluntary manslaughter with regard to Bologna. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks*, 241 N.C. 156, 159, 84 S.E.2d 545, 548 (1954).

"Voluntary manslaughter is the unlawful killing of a human being without malice, express or implied, and without premeditation or deliberation. One who kills a human being while under the influence of passion or in the heat of blood produced by adequate provocation is guilty of manslaughter." *State v. Wynn*, 278 N.C. 513, 518, 180 S.E.2d 135, 139 (1971) (citations omitted).

Defendant relies on *State v. Mathis*, 105 N.C. App. 402, 413 S.E.2d 301, *disc. review denied*, 331 N.C. 289, 417 S.E.2d 259 (1992). In *Mathis*, the evidence tended to show that the defendant retreated to his truck from his home after he and his wife had an argument. *Id.* at 403, 413 S.E.2d at 302. The defendant's wife attempted to stop him from leaving by opening the car door, trying to take the keys out of the ignition, and ordering him to get out. *Id.* The defendant then tried to drive away, and in so doing, he ran over his wife, killing her. *Id.* at 404, 413 S.E.2d at 302. The defendant was convicted of voluntary manslaughter and argued on appeal that there was insufficient evidence to support a jury instruction on voluntary manslaughter. *Id.* at 406, 413 S.E.2d at 304. The Court held that in that situation, "the victim's yelling and threatening behavior would have a natural tendency to arouse the passions of an ordinary person. From these facts the jury could find the victim's provoking conduct and defendant's action were of such close proximity in time that defendant's mind and disposition did not cool." *Id.* Accordingly, "[i]nsofar as there was evidence before the court to support a conviction of voluntary manslaughter, it was proper to submit that issue to the jury." *Id.*

*Mathis* is readily distinguishable. In the present case, there was a time lapse between the argument that took place between defendant and Bologna and the actual shootings. Defendant here was shot at, re-entered the home, shot Katsigiannis, then turned to Bologna and shot her as well. Furthermore, Tam testified that defendant shot Bologna because she was screaming after defendant shot Katsigiannis, not because of the prior altercation. Because there was no evidence that defendant killed Bologna in the heat of passion, we hold that the trial court did not err in refusing to instruct the jury on this lesser included offense.

### VII. Sufficiency of the Evidence to Establish Robbery with a Dangerous Weapon

**[10]** Defendant argues that the trial court erred in denying defendant's motion to dismiss the charge of robbery with a dangerous weapon due to insufficiency of the evidence. Specifically, defendant contends that the evidence was insufficient to prove that the theft and the use of force were part of a continuous transaction.

> [A]rmed robbery is defined as the taking of the personal property of another in his presence or from his person without his consent by endangering or threatening his life with a firearm or other deadly weapon with the taker knowing that he is not entitled to the property and the taker intending to permanently deprive the owner of the property.

*State v. Powell*, 299 N.C. 95, 102, 261 S.E.2d 114, 119 (1980); N.C. Gen. Stat. § 14-87 (2007).

> To be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction. Where a continuous transaction occurs, the temporal order of the threat or use of a dangerous weapon and the taking is immaterial.

*State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (citations omitted).

Defendant asserts a strong similarity between his case and *Powell*. The evidence in *Powell* tended to show that the defendant raped and murdered the victim, then took the deceased's automobile and television. *Id.* at 100, 261 S.E.2d at 116. Our Supreme Court found:

> [T]here [was] no substantial evidence giving rise to the reasonable inference that the defendant took the objects from the victim's presence by use of a dangerous weapon, an essential element of robbery with a dangerous weapon. The arrangement of the victim's body and the physical evidence indicate she was murdered during an act of rape. We believe that even construing the evidence in a light most favorable to the State, it indicates only that defendant took the objects as an afterthought once the victim had died.

*Id.* at 102, 261 S.E.2d at 119. Here, there is substantial evidence that defendant used a deadly weapon to kill the victims and then took their property, not as a mere afterthought, but with the intent of utilizing the vehicle and cellular telephones, and selling other personal property. Furthermore, in *Powell*, the killing occurred in the same transaction as the rape, not the theft. That is not the case here.

The fact that the victims were deceased at the time of the taking is irrelevant.

> To accept defendant's argument would be to say that the use of force that leaves its victim alive to be dispossessed falls under [N.C. Gen. Stat. §] 14-87, whereas the use of force that leaves him dead puts the robber beyond the statute's reach. That the victim is already dead when his possessions are taken has not previously been an impediment in this jurisdiction to the defendant's conviction for armed robbery. All that is required is that the elements of armed robbery occur under circumstances and in a timeframe that can be perceived as a single transaction.

*State v. Fields*, 315 N.C. 191, 201-02, 337 S.E.2d 518, 524-25 (1985) (citation and footnote omitted). Accordingly, we hold that the killings and the robbery occurred during one continuous transaction.

**[11]** Defendant also claims a lack of intent to permanently deprive either victim of their property; however, there was sufficient evidence to show that defendant took the automobile and other personal property out of the state with no intent of returning them.

> Where the evidence does not permit the inference that defendant ever intended to return the property forcibly taken but requires the conclusion that defendant was totally indifferent as to whether the owner ever recovered the property, there is no justification for indulging the fiction that the taking was for a temporary purpose, without any *animus furandi* or *lucri causa*.

*State v. Smith*, 268 N.C. 167, 172, 150 S.E.2d 194, 200 (1966). In sum, we find that all the elements of robbery with a firearm were met, and the trial court did not err in refusing to dismiss the charge.

## VIII. Jury Instruction Regarding Flight

**[12]** Lastly, defendant argues that the trial court erred in instructing the jury on flight because there was no evidence to support such an instruction. "So long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given." *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977). Defendant claims that his traveling to New York was a standard practice and was not evidence of flight.

Tam's testimony provided that defendant, Bologna, and Katsigiannis would visit her in New York approximately every other weekend. Contrary to his normal behavior, defendant went to New York alone on the trip in question, telling police that George allowed him to borrow his car and cellular telephone. Additionally, defendant arrived in New York on a Saturday, was still within the state on Tuesday, and never mentioned a date of departure. This too was an unusual pattern of behavior for defendant according to Tam's testimony.

As provided in *Irick*, "[t]he fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper." *Id.* Furthermore, "evidence of flight does not create a presumption of guilt but is only some evidence of guilt which may be considered with the other facts and circumstances in the case in determining guilt." *Id.*

Based on the evidence provided at trial, there was evidence of flight. Therefore, this assignment of error is without merit.

## Conclusion

We hold that the trial court did not err by refusing to dismiss the short form indictment; denying defendant's motion to suppress the cellular telephone records; admitting the four crime scene photographs; denying defendant's motion to dismiss the charge of second degree murder of Katsigiannis; denying defendant's motion to dismiss the charge of first degree murder of Bologna; denying defendant's motion to dismiss the charge of robbery with a dangerous weapon; refusing to instruct the jury on voluntary manslaughter with regard to Bologna's death; and instructing the jury on flight.

No Error.

Chief Judge MARTIN and Judge BRYANT concur.