IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-593

No. COA20-764

Filed 2 November 2021

Wake County, No. 16 CRS 203857

STATE OF NORTH CAROLINA

v.

MATTHEW LANE, JR.

Appeal by defendant from judgment entered 5 September 2019 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 5 October 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Jonathan J. Evans, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele A. Goldman, for defendant-appellant.*

TYSON, Judge.

¶ 1   Matthew Lane, Jr. ("Defendant") appeals from the judgments entered upon his guilty pleas to attempted trafficking heroin by possession and trafficking heroin by transportation. We affirm.

## I.   Background

¶ 2   On 5 February 2016, Raleigh Police Detective M.K. Mitchell submitted to the superior court an application under seal for authorization to surreptitiously install

and monitor a GPS tracking device for 45 days on a 2006 Acura MDX vehicle owned and registered to Sherry Harris and driven by Ronald Lee Evans, who lived with Harris. In a sworn affidavit accompanying the application, Detective Mitchell explained that he had obtained information through surveillance and a confidential informant that Evans was selling and "trafficking amount[s] of heroin throughout the Raleigh area." Detective Mitchell also requested that police be permitted to use the device to track the vehicle's location throughout the United States during the 45-day period.

¶ 3    That day, Superior Court Judge Brian Collins granted the application, issued the order, and the trafficking device was installed on the Acura. Judge Collins' order found that Detective Mitchell's affidavit provided specific and articulable facts showing probable cause that the vehicle was being used in the commission of criminal offenses and tracking the vehicle's location would provide information relevant and material to the ongoing investigation. The order specifically authorized the device to be installed surreptitiously on Harris' vehicle and that it be "operated and monitored continuously throughout the period of this order including when the subject vehicle is located in a place where there is a reasonable expectation of privacy." Because the vehicle was mobile and due to "the nature of the offenses being committed," Judge Collins' order also requested for officers to be allowed to continue monitoring the device in other jurisdictions within the United States.

¶ 4          The device would text message the Acura's location to Detective Mitchell when the vehicle would start and stop. On the evening of 25 February 2016, Detective Mitchell received a text message the Acura was in Raleigh around 11:40 p.m. The Acura traveled through Virginia and reached New Jersey by 6:05 a.m. the next day. Detective Mitchell then began manually monitoring the Acura's position as it continued to New York and stopped at an address for a Walgreens drug store. The Acura made another stop for fifteen minutes at a nearby location, and then it left New York traveling south.

¶ 5          Detective Mitchell along with other Raleigh police officers prepared to intercept the vehicle as it entered Wake County. The Acura was observed by officers, who measured its speed with a radar device and through pacing and determined the Acura was speeding approximately 81 miles per hour in a 70 mile per hour zone. The officers initiated a traffic stop of the Acura for speeding.

¶ 6          Officers approached the Acura, smelled the odor of marijuana, determined the vehicle was being driven by Defendant and was occupied by Evans, Aretha Lyles-Awuona, and Douglas Cooley. Officers searched the vehicle and its occupants and recovered 121 grams of heroin. Lyles-Awuona told investigators Evans was included on the trip for him to be introduced by Defendant to the selling source of the heroin in New York, to return for future trips to purchase heroin, and to contribute currency to the purchase of the heroin.

¶ 7 Defendant was indicted on charges of trafficking heroin by possession, trafficking heroin by transportation, and conspiracy to traffic heroin on 4 April 2016. Defendant filed a motion to suppress to challenge the use of the GPS tracking device installed on the vehicle by court order. The State asserted Defendant lacked standing to challenge the GPS tracking device on the Acura because among other things, Defendant was not in possession of the vehicle when the device was installed and Defendant did not have a close relationship to the registered owner of the vehicle. Superior Court Judge Reuben Young concluded that Defendant lacked standing and denied the motion to suppress on that basis. Defendant filed a motion to reconsider the motion to suppress which the trial court denied. Defendant was tried by a jury on 5 September 2019, which resulted in a hung jury.

¶ 8 Rather than to be retried, Defendant pleaded guilty pursuant to a plea agreement to one count of trafficking heroin by transportation and one count of attempted trafficking by possession. Pursuant to the plea agreement, the State dismissed the conspiracy to traffic heroin charge. Defendant preserved his right to appeal the denial of the motion to suppress. Defendant was sentenced to an active term of 90 to 120 months for the trafficking heroin by transportation. Defendant was sentenced to an active term of 35 to 54 months for attempted trafficking heroin by possession to run consecutive to Defendant's sentence for trafficking heroin by transportation. Defendant was fined $100,000. Defendant appeals.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b)(4) and 15A-979(b) (2019).

## III.    Issue

Defendant argues the trial court improperly denied his motion to suppress evidence from the traffic stop.

## IV.    Standard of Review

"The standard of review for a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Wainwright*, 240 N.C. App. 77, 83, 770 S.E.2d 99, 104 (2015) (internal quotation marks and citation omitted). "[I]n evaluating a trial court's ruling on a motion to suppress . . . the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Allen*, 197 N.C. App. 208, 210, 676 S.E.2d 519, 521 (2009) (citation and internal quotation marks omitted).

Findings of fact that "are not challenged on appeal are . . . deemed to be supported by competent evidence and are binding" upon this Court. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted). "The trial court's conclusions of law . . . are fully reviewable on appeal" *de novo*. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

## V.    Motion to Suppress

Defendant argues the trial court erred in denying his motion to suppress and asserts he has standing to challenge the court-ordered installation of the GPS tracking device on Harris' Acura.

The Fourth Amendment to the Constitution of the United States, as made applicable to the sovereign states through the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Subject "to a few specifically established and well-delineated exceptions," the Fourth Amendment protects an individual's privacy interests by prohibiting officers from conducting a search without a valid warrant based on probable cause. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 29 L. Ed. 2d 564, 576 (1971).

A "search" under the Fourth Amendment occurs in one of two circumstances. First, under the common law trespass theory, a search occurs upon a physical intrusion by government agents into a constitutionally protected area in order to obtain information. *See United States v. Jones*, 565 U.S. 400, 404-05, 181 L. Ed. 2d 911, 918 (2012).

¶ 17    Secondly, under a reasonable expectation of privacy theory, a search occurs without a physical trespass, but the government invades a space to obtain information where an individual holds a reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582 (1967). The test under the reasonable expectation of privacy theory requires: (1) "the individual manifested a subjective expectation of privacy in the object of the challenged search[;]" and, (2) "society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33, 150 L. Ed. 2d 94, 101 (2001).

¶ 18    Our Supreme Court has held: "Before [a] defendant can assert the protection afforded by the Fourth Amendment, however, he must demonstrate that any rights alleged to have been violated were his rights, not someone else's." *State v. Mlo*, 335 N.C. 353, 377, 440 S.E.2d 98, 110 (1994) (citations omitted). Our Supreme Court further held: "A person's right to be free from unreasonable searches and seizures is a personal right, and only those persons whose rights have been infringed may assert the protection of the Fourth Amendment." *Id.* (citations omitted).

¶ 19    "It is a general rule of law in this jurisdiction that one may not object to a search or seizure of the premises or property of another." *State v. Greenwood*, 301 N.C. 705, 707, 273 S.E.2d 438, 440 (1981) (citations omitted).

¶ 20    "Standing requires *both* an ownership or possessory interest and a reasonable expectation of privacy." *State v. Stitt*, 201 N.C. App. 233, 240, 689 S.E.2d 539, 547

(2009) (internal quotation and citation omitted). "A defendant has standing to contest a search if he or she has a reasonable expectation of privacy in the property to be searched." *State v. McKinney*, 361 N.C. 53, 56, 637 S.E.2d 868, 871 (2006) (2006).

> [T]he lack of property rights in an invaded area is not necessarily determinative of whether an individual's Fourth Amendment rights have been infringed. Nonetheless, there are many instances in which the presence or absence of property rights in an invaded area are the best determinants of an individual's reasonable expectations of privacy.

*State v. Alford*, 298 N.C. 465, 471, 259 S.E.2d 242, 246 (1979) (internal citations omitted).

Defendant asserts he has standing to challenge the search of a moving motor vehicle on a public highway both under a common law trespass theory established under *Jones* and under a reasonable expectation of privacy theory under *Katz*.

## A. Common Law Trespass

Here, Detective Mitchell monitored the vehicle's location. In *Jones*, the Supreme Court of the United States held the physical attachment of a GPS tracking device to *the defendant's vehicle* is a trespass. *Jones*, 565 U.S. at 404-05, 181 L. Ed. 2d at 918. The majority utilized a trespass-based rationale holding "the Government's installation of a GPS device on a target's vehicle and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Id.* While Defendant here has shown the use of real time GPS tracking is a search, the GPS

tracking device in *Jones* was planted on the defendant's vehicle *after* a court's allowance and *outside* of the approved area authorized by the court order. *Id.* at 403, 181 L. Ed. 2d at 917. The asserted intrusion before us was based on probable cause conducted within the time frame and geographic area authorized by the court order. *See also State v. Perry*, 243 N.C. App. 156, 163-64, 776 S.E.2d 528, 534 (2015) ("A court order compelling disclosure pursuant to 18 U.S.C. § 2703(d) [(2018)] 'shall issue only if the governmental entity offers specific and articulatable facts showing there are reasonable grounds to believe that the contents of a wire or electronic communication, or in the records or other information sought, are relevant and material to an ongoing criminal investigation.'").

¶ 23          Unlike in *Jones*, Defendant's status in the vehicle is not clear. Defendant is not the owner of the Acura and was not an individual authorized by the owner. The owner of the vehicle allowed Evans, the original target of the narcotics investigation to use her vehicle. Defendant asserts he has rights in the Acura, consistent with a bailee of the vehicle, to support standing. Defendant further asserts he was in control of the trip, he knew what location to go, and who to meet to purchase the heroin. Evans was included in the trip for money to purchase the heroin and to meet the contact in New York for future buying trips. The State concedes Defendant had permission to drive the Acura from Evans, "any driving that was taking place was going on with the permission of Mr. Evans."

¶ 24   A bailment has traditionally been defined as: "A delivery of personal property by one person (the *bailor)* to another (the *bailee*) who holds the property for a certain purpose, usu. under an express or implied-in-fact contract. Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title." *Bailment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶ 25   "A bailment is created upon the delivery of possession of goods and the acceptance of their delivery by the bailee. Delivery by the bailor relinquishing exclusive possession, custody, and control to the bailee is sufficient." *Fabrics, Inc. v. Delivery Service*, 39 N.C. App. 443, 447, 250 S.E.2d 723, 726 (1979) (citations omitted). "[T]he obligation to redeliver or deliver over the property at the termination of the bailment on demand is an essential part of every bailment contract." *Hanes v. Shapiro*, 168 N.C. 24, 31, 84 S.E. 33, 36 (1915).

¶ 26   Here, Defendant offered no evidence of delivery of possession and acceptance to establish a bailment. There is no evidence Defendant had exercised possession and exclusive control of Harris' vehicle. While Defendant knew the route and may have done the majority of the driving, it was in a vehicle Harris owned and that Evans supplied and remained within during the entire trip. Under the common law trespass theory, the trial court properly ruled Defendant does not have standing to challenge the GPS tracking device. Defendant drove Harris' vehicle for the trip at the discretion of Evans, who was present in the vehicle throughout the trip. Defendant's argument

is overruled.

## B. Reasonable Expectation of Privacy

¶ 27        In *Katz*, the Supreme Court of the United States held the installation of a listening device into a public telephone booth *without a warrant* was an unconstitutional search. *Katz*, 389 U.S. at 351, 19 L. Ed. 2d at 582. "It must always be remembered that what the Constitution forbids is not all searches and seizures, but *unreasonable* searches and seizures." *State v. Scott*, 343 N.C. 313, 328, 471 S.E.2d 605, 614 (1996) (citation omitted). The State argues Defendant cannot assert any reasonable expectation of privacy in Harris' Acura. This Court stated: "temporary occupancy or temporary use of property does not automatically create an expectation of privacy in that property." *State v. Boyd*, 169 N.C. App. 204, 207, 609 S.E.2d 785, 787 (2005).

¶ 28        In *Carpenter v. United States*, __ U.S. __, __, 201 L. Ed. 2d 507, 515-16 (2018), where agents investigating a string of robberies obtained cell phone records of cell site data under a third-party communications order for a 127-day period and a separate 7-day period, the Supreme Court of the United States held it was "an unreasonable search and seizure when [the Fourth Amendment] was adopted." *Id.* at __, 201 L. Ed. 2d at 517-18 (citation and internal quotation marks omitted).

¶ 29        Here, officers were monitoring the travel of a suspected heroin trafficker based upon a court order issued specifically for this vehicle for a limited duration issued on

a showing of probable cause.  While Defendant may have rested between stints driving the Acura, he has pled no facts to establish a heightened level of privacy while riding in a moving vehicle on a public highway, as a regular visitor or occupant of a dwelling.  *See Minnesota v. Olson*, 495 U.S. 91, 96-97, 109 L. Ed. 2d 85, 93 (1990) (holding "that [a defendant's] status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable."); *Minnesota v. Carter*, 525 U.S. 83, 90, 142 L. Ed. 2d 373, 393 (1998) ("[The defendants] were . . . not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours.  There is no suggestion that they had a previous relationship with [tenant of the apartment], or that there was any other purpose to their visit.  Nor was there anything similar to the overnight guest relationship in *Olson* to suggest a degree of acceptance into the household.  While the apartment was a dwelling place for [the tenant of the apartment], it was for [the defendants] simply a place to do business.").

¶ 30        "A person traveling in an automobile on public throughfares has *no reasonable expectation of privacy* in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281, 75 L. Ed. 2d 55, 62 (1983) (emphasis supplied).  For Defendant, the Acura was a vehicle for a trip to conduct a heroin transaction.  Defendant did not have a reasonable expectation of privacy to confer standing to challenge the court order issued on probable cause.  *See Stitt*, 201 N.C. App. at 240,

689 S.E.2d at 547.  Defendant's argument is overruled.

## VI.    Conclusion

The trial court correctly concluded Defendant did not have standing to challenge the placement of the GPS tracking device on a vehicle he did not own under a court order based upon probable cause.  Defendant has no recognizable legal interests in a vehicle he did not own and was not given authority by the owner to use.

The order of the trial court is affirmed.  The judgments and sentences entered upon Defendant's guilty plea remain undisturbed.  *It is so ordered.*

AFFIRMED.

Chief Judge STROUD and Judge INMAN concur.